Argued May 5, affirmed May 24, 1967

## STATE OF OREGON, *Respondent, v.* CHESTER JOSEPH CAMERON, *Appellant.*

427 P. 2d 1017

*F. P. Stager,* Salem, argued the cause for appellant. J. David Kryger, Salem, was on the brief.

*Gary D. Gortmaker,* District Attorney, Salem, argued the cause and filed a brief for respondent.

Before PERRY, Chief Justice, and McALLISTER, O'CONNELL, DENECKE and LUSK, Justices.

LUSK, J.

Defendant appeals from the conviction of receiving and concealing stolen property. Trial was before the court without a jury. Defendant's sole assignment of error is directed to the court's denial of his motion for a judgment of acquittal based on the claimed insufficiency of the evidence.

Clear evidence shows that the property described in the indictment as "one Littler blue suit coat and one matching pair of pants" was stolen from the car of the owner of such property, Donald Ferdinand Swanson. Swanson testified that about ten o'clock p.m. on June 15, 1966, he parked his car on State Street in Salem near the intersection of Lancaster and adjacent to the front door of a supermarket, which he referred to as an "I.G.A." store. He locked the car and left it. About four hours later, when he returned to the car, he found that its window on the passenger's side had been broken and various articles of clothing removed, including the suit described in the indictment. The suit was produced on the trial, identified by Swanson, and received in evidence. In the inside pocket of the coat was a tag with Swanson's name on it, and showing the date of purchase as "12/23/65". The coat also bore the seller's brand name, "Littler". Swanson testified that he bought the suit from Littler's shop in Seattle on the above date. He valued it at $125.

Marcia Trumbly, a witness for the state, testified that she had known the defendant for about six months and that she saw him on June 15, 1966, "in the vicinity of Lancaster Drive and State Street." She was then asked to state: "At that time what occurred, * * *" and answered:

"Several friends—two friends of mine [a couple called Christiansen], had gone out to Mitchell's

that night drinking, and Chet [the defendant] arrived later, and around midnight, or so, I went out to our car because I was sick, and I was in the back seat of the car, and I don't remember how long I was out there, and I heard something, some kind of noise, coming from somewhere, but I didn't turn around or pay any attention to it because I wasn't feeling well, and later Chet came over to the car and said, was I feeling all right, and I said, 'No', and I said would he please go in and tell the people I was with I wanted to go home, and he did, and we got in the car and started to leave, and somebody said something, I don't know what it was that was said, but we pulled across the street, and Chet got out of the car and picked up some articles and put them in the car, and I was taken home."

The witness testified that the articles that the defendant picked up were clothing, though she was unable to further describe them. She characterized the noise she heard as a "thump" and said that it was "in a distance" and not in front of her because the car she was in was parked directly in front of Mitchell's and the noise could have come from across the street. The clothes which the defendant put in the car were in a parking lot across the street near to a building, but the witness did not notice any vehicle. So far as she could remember, the only thing that the defendant said about the clothing that he put in the car was, "There is some clothing."

Miss Trumbly testified on cross-examination that she had 20 or 25 drinks—sloe gin and rum—over a period of three and one-half or four hours; and was drunk; that the sound she heard could have been a backfire of a car; that she did not know where the clothes came from, and she imagined they were picked up from the ground, although she did not see it.

Deputy Sheriff Carson testified that at about 2:15 o'clock a.m. on June 15, 1966 (meaning, probably, June 16) he commenced an investigation of the case and observed Mr. Swanson's car in front of the Keg & Platter Restaurant. The front window was broken, glass was scattered throughout the front portion of the car and a rock was lying on the floorboard behind the gas accelerator. There were no clothes in the car.

Carson obtained a search warrant, and on June 25, 1966, went with another deputy to the defendant's place of abode and found him wearing Mr. Swanson's blue suit. A search of the defendant's apartment revealed other clothing stolen from Swanson's car. After having been duly warned of his rights, the defendant told the officers that the clothes came from a party in California whom he did not name. The officers thereupon placed the defendant under arrest.

The defendant introduced no evidence, and the foregoing is the substance of all the evidence in the case.

The defendant contends that the evidence is not sufficient to prove that he knew or had good reason to believe that the suit of clothes was stolen as required by ORS 165.045. He relies on *State v. Long,* 243 Or 561, 415 P2d 171, in which we held that "mere possession of recently stolen goods is not sufficient to prove guilty knowledge, in the absence of other proof that the accused knew or had reason to know that the goods were stolen." In this case we think there was other such proof.

The defendant picked up a "bunch of clothes" (the witness Trumbly's language) on a parking lot in the dead of night and put them into an automobile in which he was riding and went off with them. Sometime between ten p.m. and 2 a.m. of that same night Swanson's car, which was parked in the vicinity of the park-

ing lot (and of "Mitchell's," where the defendant and his companions had their drinking party)[1] was broken into and the clothing in the car stolen. Ten days later the stolen property was found by the officers in possession of the defendant, whose explanation that the clothing was supplied to him by an unidentified person in California could well have been rejected by the trial judge as a fabrication in view of all the circumstances, including Swanson's testimony that he bought the suit in Seattle six months before.

We think the evidence was sufficient. See the well considered opinion, with its comprehensive review of the authorities, in *Wertheimer v. State,* 201 Ind 572, 169 NE 40, 68 ALR 178. An illustrative case is *Gandolpho v. The State,* 33 Ind 439. The evidence showed that a woolen mills was broken into and goods stolen therefrom and that the defendant was in the vicinity of the mills on the evening of the larceny. Afterwards the defendant was in possession of a trunk containing a part of the stolen goods. He claimed the trunk as his own and made a false statement in reference to what it contained. The evidence was held sufficient to justify the jury in finding the defendant guilty of receiving the goods knowing them to have been stolen. See, also, *Jaramillo v. State,* 18 Tex Ct Rep 796, 100 SW 921; *Wood v. State,* 18 Ala App 654, 94 S 256; Note, 15 A & E Ann Cas 899; 45 Am Jur 403-405, Receiving Stolen Property § 18.

The judgment is affirmed.

---

[1] In the state's brief it is said: "During this time the defendant, and one Marcia Trumbly, one Darrell Dean Christiansen and his wife, were at Marshall's Inn. This Inn is located across the street from the area where the complaining witness parked his car." There is nothing in the record to support these gratuitous assertions. The judge, however, could have found from the evidence that the events of the night in question occurred in the vicinity of State Street and Lancaster Drive.