Argued October 28, affirmed December 9, 1971

STATE OF OREGON, *Respondent, v.*
GARY DWAYNE NIX (No. 7089), *Appellant.*
491 P2d 635

384

*Ken C. Hadley,* Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*Robert E. Brasch,* District Attorney, Coquille, argued the cause and filed the brief for respondent.

Before Schwab, Chief Judge, and Foley and Thornton, Judges.

THORNTON, J.

Co-defendants Nix and Brown were convicted of receiving and concealing stolen copper telephone wire in violation of ORS 165.045.[1] Nix appeals, contending that the evidence was insufficient to establish that he knew or had good reason to believe that the telephone wire had been stolen and, therefore, the trial court erred in denying his motion for a judgment of acquittal.

■ The trial judge denied a motion for a judgment of acquittal at the close of the state's case. Defendant elected not to stand on his motion and presented evidence in his defense. In such a case the denial of the motion may still be assigned as error but we must consider all of the evidence and affirm the trial court

---

[1] ORS 165.045 provides:

"Any person who buys, receives, or conceals or attempts to conceal any stolen money or property, knowing or having good reason to believe that it was stolen, shall be punished upon conviction by imprisonment in the penitentiary for not more than five years, or by imprisonment in the county jail not less than three months nor more than one year, or by a fine of not less than $50 nor more than $500."

if the record as a whole contains sufficient evidence to support a verdict against the defendant. *State v. Lamphere,* 233 Or 330, 378 P2d 706 (1963); *State v. Gardner,* 231 Or 193, 372 P2d 783 (1962).

The evidence was that a supervisor for a local paperboard mill observed a fire burning with black dirty smoke on an isolated portion of the company's property. Upon investigation the defendants were found burning insulation from copper wire. The supervisor called a company fire truck, which put out the fire. Another employe called the sheriff's department. An officer was dispatched and the defendants were taken into custody.

The officer testified that defendant Brown had told him he had purchased the wire from a man in Coos Bay for 12 cents a pound. He described the man as being approximately six feet tall, medium build, with brown hair.

A storeroom employe of the local telephone company testified that he could positively identify a portion of the wire as the property of the company because of a tag attached to it. The wire had been stored as scrap on telephone company premises on July 27, 1970. The telephone company periodically sells its scrap by bid to buyers. However, no such sales had been made between July 27 and September 25, the date when defendants were found in possession of the wire.

A construction foreman for the telephone company estimated that the wire found in the defendants' possession weighed 400 pounds. He testified that theirs was the only firm in the area that used this particular type of wire and that it was not available locally.

Defendant did not take the stand. However, co-

defendant Brown testified for the defense that he and Nix were approached by a man in a local supermarket and asked if they wanted to purchase some insulated copper wire; that after expressing their interest in purchasing the wire, they agreed to look at the wire; that the three of them then drove to the alley behind a drive-in snack shop, where the seller had the wire in the back of a pickup truck; that Brown offered to pay 12 cents a pound for the wire and estimated that there were 200 pounds of wire; that the seller accepted and Brown paid him $24; that Brown and Nix agreed to split the proceeds from the wire after the cost was deducted; that defendants did not ask the seller where he got the wire, nor did they ask for a receipt; that Brown had previously bought similar wire for 10 cents a pound, burned off the insulation and sold the copper. Brown testified he knew about the mill property from fishing in the area and had previously used it to burn insulation from wire; that after the sale Nix told Brown that the seller's name was Ronald Henderson.

■■■ Guilty knowledge is the gravamen of the offense of receiving and concealing stolen goods. *State v. Long,* 243 Or 561, 415 P2d 171 (1966). As this element is rarely susceptible to direct proof, it is usually established by circumstantial evidence. In reviewing the denial of defendant's motion for a judgment of acquittal, we view the evidence in the light most favorable to the state. *State v. Freeman,* 4 Or App 627, 628, 481 P2d 638 (1971); *State v. Livingston,* 2 Or App 587, 469 P2d 632 (1970).

Even accepting Brown's account of how he and defendant acquired the stolen wire, the circumstances of the alleged purchase were sufficiently unusual to arouse suspicion of reasonable men that the property had been stolen.

Secondly, the fact that when discovered the two men were engaged in burning the insulation from the stolen wire, and in an isolated area, were additional circumstances from which the jury could likewise infer guilty knowledge.

Finally, the jury was not required to believe Brown's unsubstantiated account of allegedly having purchased the stolen wire from a stranger who happened to accost them in a supermarket. The jury could have found the testimony concerning the acquisition of the wire to be a complete fabrication. *State v. Cameron,* 247 Or 199, 427 P2d 1017 (1967), held that such a circumstance was sufficient to support a finding that defendant knew or had good reason to believe the property was stolen.

■ We conclude that the evidence was sufficient to enable the jury to infer that defendant Nix knew or had "good reason to believe" that the wire was stolen and was therefore guilty of the crime charged.

Affirmed.