Argued May 15, affirmed June 23, 1972

# STATE OF OREGON, *Respondent, v.*
# WILLIE JONES (No. C-71-05-1526),
# *Appellant.*

498 P2d 390

*James T. Marquoit,* Portland, argued the cause for appellant. With him on the brief were Maizels & Marquoit, Portland.

*Thomas H. Denney,* Assistant Attorney General, Salem, argued the cause for respondent. With him on

the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before LANGTRY, Presiding Judge, and FOLEY and FORT, Judges.

FOLEY, J.

Defendant was convicted of illegal possession of narcotics and received a five-year sentence. He appeals alleging the trial court erred in denying his pretrial motion to suppress evidence which he claimed was obtained by an unlawful search and seizure.

The undisputed evidence at the suppression hearing was as follows:

Officer Giani, an experienced narcotics officer of the Portland Police Department, was the passenger in a police car which had been parked in front of a bank at S. W. Sixth and Madison streets in Portland. The driver, Officer Snyder, had entered the bank to cash a check and Officer Giani was just alighting from the car when he observed the defendant come around the corner 15 or 20 feet from Officer Giani and approaching him. Upon observing Officer Giani, whom he knew as a narcotics officer, defendant faltered in his gait, almost stumbling, then continued on towards the officer until he was standing directly in front of him. The officer said, "How are you, Willie, where are you going?" Defendant said, "I'm going to pay a water bill." Then the officer said, "How are you doing, Willie?" Defendant had been carrying a brown, paper bag with a container of oranges in it. He dropped the bag, or threw it down to the sidewalk, and placed his left hand on the officer's chest, pushing him away. At the same time, defendant thrust his right hand into his right trouser pocket. The officer reached down and

grabbed defendant by the right hand while his right hand was still in his pocket. The officer clasped defendant around the body with his other hand and they spun around and fell to the steps of the bank. The officer was successful in removing defendant's hand from his pocket, and clenched between defendant's hand and the officer's hand was a large, orange balloon inside which were eight smaller balloons containing heroin. Officer Giani had known defendant as a narcotics dealer for several years. He testified he had seen him dealing, i.e., engaged in selling heroin "[t]wenty-five, 30 maybe 40 times," and that his *modus operandi* was to keep his narcotics in a balloon, or balloons, in his pocket. When he got out on the street or in an area where he was going to do his dealing, he removed the heroin from his pocket and placed it in his mouth. When he had occasion to sell a bag of heroin, he would remove the balloon, place the larger bag in his mouth and deal off one balloon.

Officer Giani testified that four to six weeks prior to the date of the arrest in the present case he had observed defendant on 10 to 20 occasions in front of a pool hall on Williams Avenue in Portland engage in the sale of heroin from a balloon that he kept in his mouth, which he had taken from his pocket and then placed in his mouth. The officer also testified about an occasion approximately four years previously when a few blocks from the place of arrest in the present case he had observed defendant selling heroin from a balloon and as the officer approached defendant, defendant pushed him back, placed his hand in his right coat pocket, removed a balloon and put it in his mouth and swallowed it so that the officer was unsuccessful in recovering the balloon.

The officer testified that his meeting with defendant on the day of the present arrest was unplanned and unexpected.

The suppression hearing judge analyzed the testimony as follows:

"THE COURT: * * * * *

"Well, this is a situation that I am absolutely convinced that if Mr. Jones would have simply said hello to Mr. Giani, as he knows this operation, works the Vice Squad, Officer Giani is known to every dealer in town and vice versa, it took Jones to make the first move and his move was a typical street dealer's move. He took the first action and his action was to drop the sack and move for his pocket and make the move, obviously, the standard move to try to mouth and swallow the balloons. This is a reality of life. That is well known to the Vice Squad people and it is a typical operation of a street dealer. Once that move was made, the officer, at that point, had the right to make the seizure that he did right then, on the spot. You don't sit back and wait for any affidavits or search warrants at that time. That just denies any reality of life because that evidence would be long gone. Mr. Jones would pass those balloons through his system and he would be back dealing the same balloons on the street.

"In this case, I think it is without any question a valid seizure under these circumstances. The Motion to Suppress is denied."

While *State v. Keith*, 2 Or App 133, 465 P2d 724, Sup Ct *review denied* (1970), set forth the questions which an officer must ask himself to determine whether he has probable cause to search and seize without a warrant, it goes without saying that there are instances in which the questions must be asked and answered with immediacy. This is such a case. We agree with

the trial court that the cumulation of circumstances, including defendant's guilty conduct upon encountering Officer Giani, the officer's actual knowledge of defendant's involvement over a long period of time in the narcotic traffic and the officer's knowledge of defendant's push-and-swallow method of disposing of narcotics provided probable cause for the warrantless search and seizure involved here. *State v. Keith,* supra; *State v. Murphy,* 3 Or App 82, 471 P2d 863 (1970).

Affirmed.