Argued June 26, affirmed September 28, petition for
rehearing denied October 26, petition for review
denied December 12, 1972

## STATE OF OREGON, *Respondent, v.* WILLIE AMOS JACOBS (No. C-71-09-2730), *Appellant.*

501 P2d 353

*Ken C. Hadley,* Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*John W. Osburn,* Solicitor General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Burgess, Special Assistant Attorney General, Salem.

Before SCHWAB, Chief Judge, and FORT and THORNTON, Judges.

THORNTON, J.

Defendant was indicted for illegal possession of a dangerous drug, "to-wit: Methylphenidate hydro-

chloride." Former ORS 475.100. He was convicted by jury trial and appeals asserting among other alleged errors the following: (1) The court erred in instructing the jury that the burden of proof to show a valid prescription is on the defendant; (2) the court erred in denying defendant's motion to suppress; and (3) the court erred in denying defendant's motion for judgment of acquittal.

■ (1) Defendant did not object at trial to the court's instruction that the burden of proof to show a valid prescription was on defendant. Therefore there is no error for us to review. *State v. Kniss,* 253 Or 450, 455 P2d 177 (1969); *State v. Jorgensen,* 8 Or App 1, 492 P2d 312 (1971), Sup Ct *review denied* (1972).

■ (2) As to defendant's second assignment, the state's evidence as to the challenged search and seizure was as follows: That the arresting officer, Officer Giani, was a member of the narcotics squad of the Portland Police Bureau; that while on a routine narcotics patrol in an unmarked police car with two fellow officers, Giani observed a vehicle being operated by a man named James Lee Simms; that the officer knew that Simms was involved in narcotics, and had information that he had no driver's license; that immediately upon seeing Simms, Giani directed the other officer, who was driving the police car, to stop their car in front of Simms' vehicle, which then stopped voluntarily in the rear of the police car; that Giani got out and walked back to question Simms; that as he came up to Simms' vehicle on the driver's side Simms opened the door and started to alight; that Giani bent forward to see who was in the vehicle and observed defendant, whom he recognized, sitting in the front seat on the passenger side; that at that moment

Giani saw defendant place a small cellophane or plastic package alongside his right leg on the seat "like [he was] attempting to conceal it"; that Giani quickly stepped into the vehicle, crawled over the driver's seat and reached alongside defendant to seize the package; that the package was a cigarette package; that two tablets were visible between the cellophane outer wrapper and the package itself; that Giani believed the tablets to be "Ritalin"; that he then arrested defendant for illegal possession of a dangerous drug; that the tablets were later determined to be "Ritalin"; and that both Simms and defendant had known Giani as a narcotics officer for some time.

Defendant contends that the action of the arresting officer was "without probable cause and based on mere suspicion." Defendant relies on *State v. Elkins*, 245 Or 279, 422 P2d 250 (1966), in which our Supreme Court reversed a conviction where the police officer took pills he thought suspicious into his possession for analysis after Elkins had already been arrested for a traffic violation.

Defendant overlooks a significant difference in the facts between *Elkins* and the case at bar. Here defendant's furtive conduct as the arresting officer stood outside the vehicle, together with the officer's knowledge that both Simms and defendant were involved with narcotics and drugs, gave the officer probable cause to believe that defendant was attempting to conceal incriminating evidence from him and to seize the same for inspection. *State v. Williams*, 253 Or 613, 456 P2d 497 (1969) ; *State v. Cortez*, 10 Or App 122, 497 P2d 1228 (1972). The trial judge correctly denied defendant's motion to suppress the seized evidence.

(3) Lastly, defendant urges that the trial judge erred in denying defendant's motion for a judgment of acquittal. Defendant makes two separate points in support of this assignment. First, that defendant had established a complete defense to the charge by showing that he possessed the subject drug under a valid prescription and second, that the state failed to prove that methylphenidate hydrochloride and "Ritalin" were one and the same drug.

The thrust of defendant's argument in support of his first point is that the trial judge should have granted his motion because the fact that he had a current valid prescription for "Ritalin" was established by a copy of the prescription, the druggist's testimony and a stipulation as to the testimony of the prescribing physician. The state counters this argument by evidence that the two tablets possessed by defendant were 10 milligrams when the prescription was for 20 milligrams. The prescription authorized defendant to possess up to thirty 20 milligram "Ritalin" tablets. Defendant admitted possessing two 10 milligram "Ritalin" tablets at the time he was arrested. ORS 475.100 specifically exempts from criminal prosecution any person possessing a dangerous drug "* * * [u]pon a written prescription of a practitioner licensed by law to administer such drug * * *." There was a factual conflict in the trial inasmuch as defendant testified he received two 10 milligram "Ritalin" tablets from the drugstore and the druggist testified he could not remember filling the specific prescription, but that he didn't substitute 10 milligram "Ritalin" tablets for 20 milligram tablets because that would be illegal.

■ Where the denial of a motion for a judgment of acquittal based upon the sufficiency of the evidence

is assigned as error, this court must consider all of the evidence and affirm the trial court if the record as a whole contains sufficient evidence to support a verdict against defendant. *State v. Nix,* 7 Or App 384-85, 491 P2d 635 (1971).

Giani testified that defendant told him at the police station that he had a prescription for the "Ritalin." However Giani testified that "Ritalin" is often found "on the street" in the possession of persons who have prescriptions for it. He testified that he has arrested 50 to 100 persons for illegal possession of "Ritalin" who have claimed to have prescriptions.

Defendant's prescription was for thirty 20 milligram "Ritalin" tablets. He endeavored to explain his possession of the two 10 milligram tablets by testifying that the pharmacist gave him twenty-six 20 milligram and eight 10 milligram tablets the last time he had the prescription filled. However, the pharmacist who filled the prescription testified that he would have filled the prescription with thirty 20 milligram tablets. He testified that "there's no way at all" that he would have filled it as defendant claims; "* * *[i]t is against the law" to substitute other dosages than prescribed.

In view of the pharmacist's testimony, the trial judge properly denied defendant's motion for a judgment of acquittal, notwithstanding defendant possessed a valid prescription for "Ritalin." As our Supreme Court held in *State v. Linville,* 127 Or 565, 273 P 338 (1928), where the testimony is conflicting and according to the prosecution's witnesses defendant could be found guilty of some offense under the indictment, the court should refuse to direct a verdict for the defendant. Viewing the evidence "in the light most favorable

to the state" as we must do (*State v. Nix,* supra), there is sufficient evidence to support the verdict against defendant.

■ ■ Turning to defendant's second point, defendant here is contending for the first time that his motion for a judgment of acquittal should have been granted because the state failed to prove that "Ritalin" and methylphenidate hydrochloride are one and the same drug. This contention cannot be sustained. Defendant did not raise this point in the lower court. As we have already pointed out in considering defendant's first assignment of error, this court will not review asserted error not properly preserved in the trial court. Moreover, when defendant took the stand in his own behalf and testified in defense of the charge that he had a valid prescription for the drug which was in his possession, he thereby in effect conceded that the drug he possessed was methylphenidate hydrochloride. This made it unnecessary for the state to prove that methylphenidate hydrochloride and "Ritalin" were one and the same drug.

Affirmed.

FORT, J., dissenting.

Defendant was indicted for the illegal possession of a dangerous drug, "to-wit: methylpenidate [sic] hydrochloride." Former ORS 475.100. He was convicted and sentenced to five years' imprisonment. Defendant appeals asserting among other alleged errors the denial of his motion for judgment of acquittal, offering two propositions in support thereof.

One is that the evidence is insufficient to support the verdict since it nowhere establishes that he possessed the substance charged in the indictment or

that the substance found on his person—Ritalin—was a dangerous drug.

It is admitted that all of the evidence in the case related to a tablet referred to throughout the trial only as "Ritalin." The record is devoid of any evidence that relates Ritalin in any respect to the drug charged in the indictment. ORS 474.010, which defines as dangerous a series of drugs, identifies neither Ritalin nor the drug charged in the indictment. OAR 8-005 (1) declares methylphenidate hydrochloride to be a dangerous drug, so designated pursuant to ORS 475.010 (1) by the Drug Advisory Council.

If it is contended that Ritalin is prohibited under that portion of OAR 8-005 (1) which prohibits "any salts, derivatives or compounds" of the drugs, including methylphenidate hydrochloride, named therein, there is nothing in the record to support it. Nor is there any evidence that Ritalin is a "registered trademarked or copyrighted preparation or compound registered in the United States Patent Office containing" methylphenidate hydrochloride.

Judicial notice is not judicial knowledge. He who bears the burden of establishing a fact of which a court may take judicial notice is not because of that relieved of the necessity of bringing that fact to the knowledge of the court. *Quong Wing v. Kirkendall,*① 223 US 59, 32 S Ct 192, 56 L Ed 350 (1912); *Shapleigh v. Mier,* 299 US 468, 57 S Ct 261, 81 L Ed 355 (1937); 113 ALR 258 (1938).

---

① There, speaking through Mr. Justice Holmes, the court said:
"* * * [T]here are many things that courts would notice if brought before them that beforehand they do not know. It rests with counsel to take the proper steps, and if they deliberately omit them, we do not feel called upon to institute inquiries on our own account. * * *" 223 US at 64.

Furthermore, the court was not asked to and did not take judicial notice that there was any relationship between the drug charged and Ritalin, nor is the matter covered by ORS 41.410. *See:* The Oregon Lawyer's Trial Book, Judicial Notice §§ 2.1 and 2.2 (1967).

Concerning the two Ritalin tablets found on the defendant, the arresting officer who was the sole witness called by the state in its case-in-chief, testified only that:

> "The Kool cigarette package and the two suspected Ritalin tablets were then taken to the crime laboratory where they were to be processed and analyzed.
>
> "Q Did you bring those items with you today?
> "A No, I did not. The laboratory technician is bringing them.
>
> "Q All right. Thank you."

The state, however, rested at the conclusion of that officer's testimony. No one from the crime laboratory was ever called. No rebuttal testimony, and none offered by the defendant, at any time referred to the drug charged in the indictment or established any relationship between it and Ritalin. Since there was a total failure of proof of any relationship between Ritalin and "methylpenidate [sic] hydrochloride" or that the defendant at any time had any of the latter commodity in his possession, I conclude that the conviction should be set aside. Accordingly, I respectfully dissent.