Argued February 27, affirmed April 2, petition for
rehearing denied May 10, 1973

# STATE OF OREGON, *Appellant, v.* MARCUS DEWAYNE BRANCH (No. C-72-06-1896 Cr), *Respondent.*

508 P2d 254

*John W. Osburn*, Solicitor General, Salem, argued the cause for appellant. With him on the brief was Lee Johnson, Attorney General, Salem.

*James T. Marquoit*, Portland, argued the cause for respondent. With him on the brief were Maizels & Marquoit, Portland.

Before SCHWAB, Chief Judge, and LANGTRY and THORNTON, Judges.

LANGTRY, J.

This appeal is by the state from an order sustaining a motion to suppress (ORS 138.060(4)) narcotics evidence seized from defendant in a room at the Thunderbird Motel near the Columbia River bridge in Multnomah County.

Sergeant Englert of the Multnomah County Sheriff's Department answered a call from the night manager of the motel summoning him to investigate a narcotics situation.

At the motel the manager showed him some residue he said a motel maid had given him from a mess she said she had cleaned up in Room 310. The man-

ager also said that a motel telephone operator had told him that the operator overheard a telephone conversation on the Room 310 line which indicated the occupants expected the delivery of narcotics to that room that night and that then they would leave without paying the room bill.

Englert recognized the residue shown him as marihuana, and without verifying the information passed on by the manager with the maid or the telephone operator, he and other officers went to Room 310 and knocked on the door. The officer testified:

> "A male, who was later identified as Ellis Mc-Dade, answered the door, and I identified myself as a Sheriff's narcotics officer and produced credentials. He was in the nude and we went inside the room and we shut the door, and we let him put on some clothes and we had a conversation with him."

There was no cross-examination about the entry into the room. The above quotation is all there is in the record about whether the entry was made with permission of the occupant. An extinguished marihuana roach was in an ash tray and a prescription bottle with defendant's name on it was observed.

Some 20 minutes later a knock came at the door. Englert answered and three men, with defendant in the lead, started to enter. Englert identified himself and defendant immediately put a hand into a front pant pocket. Englert seized his hand and the pocket and in an ensuing search the narcotics which are the subject of the motion were seized from the pocket. A skin search of the three entering men disclosed no other contraband.

At the hearing on the motion Englert testified

that there was not time to seek a search warrant in view of the information gleaned by the telephone operator. He said that information, the hearsay from the maid and the marihuana residue he was shown were his basis for invading the room. That information, plus the marihuana roach in the room, the pill bottle and the defendant's gesture to the pocket, taken all together, were his reasons for searching the defendant.

Repeated colloquies between court and counsel occurred during the testimony. At one point the court indicated it thought access to the room was legitimately accomplished; at another, the court said it would not consider the information from the telephone operator, but later indicated it was being considered.

When the court made its ruling this was given as the basis:

"* * * If I put myself in the officer's place * * * I would have got ahold and talked to the operator, or I would have talked to the maid. I would have gotten the name of the maid before I moved. If I were only assigned to * * * narcotics work where search and seizure is crucial * * * I would have done that so cold that when I moved in it would be there. *I would have a reason for being in the room.*

"Motion allowed." (Emphasis supplied.)

These remarks were made after the state had rested its case on the motion. The record does not show that the defendant was given an opportunity to put on a case, and also shows that no request was made to do so.

■ We agree with the trial court that the hearsay evidence, in the context of this case, was not reason enough to enter the room without a warrant, absent

permission to do so. No reason was given by the officers for not talking to the maid and the telephone operator.

■ A search based on probable cause without arrest is permissible where delay in obtaining a warrant will likely result in a loss of evidence. *State v. Murphy,* 3 Or App 82, 471 P2d 863 (1970). " 'Reasonable ground for suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief' constitutes probable cause to search." *Id.,* 84. But that does not mean that hearsay as a base for probable cause is a substitute where more direct evidence is available. This is why, in *Aguilar v. Texas,* 378 US 108, 114 n 4, 84 S Ct 1509, 12 L Ed 2d 723 (1964), the court said:

"To approve this affidavit would open the door * * *. A police officer who arrived at a 'suspicion,' * * * that narcotics were in someone's possession could not obtain a warrant. But he could convey this conclusion to another police officer, who could then secure the warrant by swearing * * *."

*See also State v. Flores,* 251 Or 628, 447 P2d 387 (1968).

In *McCray v. Illinois,* 386 US 300, 307-08, 87 S Ct 1056, 18 L Ed 2d 62, *rehearing denied* 386 US 1042 (1967), the court said:

" '* * * If the magistrate [when asked to issue a warrant] doubts the credibility of the affiant, he may require that the informant be identified or even produced. It seems to us that the same approach is equally sufficient where the search was without a warrant, that is to say, that it should rest entirely with the judge who hears the motion to suppress to decide whether he needs such disclosure as to the informant in order to decide

whether the officer is a believable witness.' * * * [State v. Burnett, 42 NJ 377, 388, 201 A2d 39 (1964).]"

The trial court's finding that the hearsay was not a sufficient base for the search should stand.

■ The question remains whether entry to the room was with permission of the occupant McDade. This is because once the officers were in the room they saw the marihuana roach, and the defendant, when he entered, made the gesture to his pocket, which could have signified the presence of either a weapon or contraband. Hence, if the officers were in the room with permission, subsequent events gave probable cause for the search of defendant.

■■ We have noted above that there is a paucity of information in the record on this question. If a warrantless search is in question, the state has "* * * the burden of proving reasonable cause * * *." *State v. Fisher,* 5 Or App 483, 485, 484 P2d 864 (1971). There was only evidence that was conjectural at best on the permissiveness of entry; therefore, the state failed to carry its burden and that is inherent in what the trial court found.

Affirmed.

THORNTON, J., dissenting.

I am unable to agree with the majority that the entry by the officers into Room 310 was unlawful under all the facts and circumstances shown here.

The record is silent as to whether the officers asked permission to enter the room or whether the occupant consented to their entry. The trial judge made no clear finding on this point. In the absence of some evidence that their entry was forcible, or was

resisted or objected to in some manner, I would hold that the entry was lawful.

Prior to going to the room, the facts and circumstances of which Sgt. Englert had reasonably trustworthy information were sufficient to warrant a man of reasonable caution in the belief that (a) some occupant of Room 310 was in possession of marihuana, and (b) some occupant or occupants were apparently about to receive a shipment of drugs. On the basis of this, I believe Sgt. Englert was reasonably entitled to conclude "in light of his experience that criminal activity may be afoot" (*Terry v. Ohio,* 392 US 1, 30, 88 S Ct 1868, 20 L Ed 2d 889 (1968)), and that further investigation was warranted.

Secondly, I would hold that under the exigent circumstances shown here the officer was not required to (a) locate and interrogate the chambermaid and telephone operator, or (b) obtain a search warrant, before he could go to Room 310 to investigate.

Probable cause to arrest need not be shown before an officer can undertake a preliminary inquiry as to an alleged crime. *Terry v. Ohio,* supra at 21-22.[1] The evidence required to make the inquiry need not be of the same degree of conclusiveness as that required for an arrest or a search.[2] Going to a room to inquire is not an arrest.

---

[1] As the Supreme Court more recently observed in Adams v. Williams, 407 US 143, 145, 92 S Ct 1921, 32 L Ed 2d 612 (1972):

"* * * The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, Terry [Terry v. Ohio] recognizes that it may be the essence of good police work to adopt an intermediate response * * *."

[2] See, for example, State v. Devine, 9 Or App 424, 496 P2d 51, Sup Ct *review denied* (1972).

The strength of the information that the officer requires to engage in questioning is necessarily much less than it would be to arrest and search. *People v. King,* 175 Cal App2d 386, 346 P2d 235 (1959).

The information furnished Sgt. Englert by the citizen informant, the motel manager, was of course hearsay. However, the manager corroborated his information by showing Englert the contents of the ash tray, including the cigarette butt. The officer examined it and found it in fact to contain marihuana. The information provided by the maid and the telephone operator to their supervisor, the night manager, purported to be their first-hand observations, not mere rumors. They reported it to their supervisor, who in turn reported it to the police. The requirement of reliability set forth in *Aguilar v. Texas,* 378 US 108, 84 S Ct 1509, 12 L Ed 2d 723 (1964), was met.

In *State v. Riner,* 6 Or App 72, 485 P2d 1234, Sup Ct *review denied* (1971), the police had received a report from an unreliable source that the defendant, a nonresident of Oregon, was a narcotics user, and another report from a reliable source that defendant had a gun in his vehicle. Based upon these reports the police, without a warrant, stopped defendant as he was driving his vehicle away from the motel where he was staying. After the defendant failed to produce a valid driver's license, the police placed him under arrest for driving without a valid license. Drugs were discovered on defendant's person while he was being booked in at the local jail. In affirming this conviction this court did not mention the necessity for any verification of the reports from citizen informants.

In *State v. Poteet,* 9 Or App 231, 495 P2d 783, Sup

Ct *review denied* (1972), the police had been dispatched to a Klamath Falls hotel to investigate a report from hotel personnel that a man was on the roof. The record does not disclose who reported this fact to the police. When the officers arrived at the hotel they began to question the desk clerk but were interrupted by one Ivan Lutz. Lutz told the officers that he had been drinking with the defendant the previous afternoon and that the defendant told him he was going to " 'rob' the Corner Store"; that later in the afternoon the defendant had asked him if he could borrow either sheets or a bedspread to make a rope to go down through the skylight into the Corner Store; and that just before the police were called he had gone into defendant's room, found the room empty and the window out onto the roof of the Corner Store open.

Based on the foregoing information the police went up to the defendant's room in the hotel and arrested him as he was crawling through the window into his room. We held that the police officers had probable cause to arrest the defendant for the burglary of the Corner Store at the time that he entered his room from the adjoining roof top.

In *State v. Hoover,* 219 Or 288, 347 P2d 69, 89 ALR2d 695 (1959), probable cause to arrest was held to be established solely on the report of a pedestrian that the defendant had threatened him with a gun.

In *State v. Murphy,* 3 Or App 82, 471 P2d 863 (1970), a woman informed the police that she had arranged to purchase marihuana from the defendant. The police were waiting for the defendant when he arrived at her apartment to consummate the sale. Marihuana was found in a search of the defendant. This court held that the information provided by the

woman established probable cause for the search. No mention was made in either of these opinions of any verification of the reports or that the police had prior information as to the reliability of the informant. Similarly no mention was made in either *Riner* or *Poteet* of any verification of the reports, or that the police had prior information as to the reliability of the informer.

As we pointed out in *State v. Poteet,* supra, 9 Or App at 237:

"A 'citizen-informer,' by rejecting the cloak of anonymity enjoyed by a 'police informant,' may expect to be called to testify after an arrest, and may be exposing himself to an action for malicious prosecution if he makes unfounded charges. We find that the reliability of Mr. Lutz was sufficiently established when he disclosed his identity and gave a detailed report of the facts within his personal knowledge which led him to believe that a burglary of the Corner Store by the defendant was in progress."

I believe that the information furnished Englert by the motel manager, together with his own inspection and verification of the physical evidence shown him, although not sufficient to constitute probable cause for arrest, or to search the room or its occupants, nevertheless did constitute a basis for reasonable suspicion that one or more occupants of Room 310 were involved in at least a marihuana violation, and possibly in illicit narcotics traffic. It seems to me that all of this information taken together authorized Englert to go to Room 310 and make appropriate inquiry concerning this suspicious activity. Certainly what transpired after the arrival of defendant and his companions authorized the search of defendant

and his subsequent arrest. Defendant's quick motion in revealing himself as the carrier of the narcotics added to the probable cause already accumulated. *State v. Williams,* 253 Or 613, 456 P2d 497 (1969); *State v. Jacobs,* 11 Or App 218, 501 P2d 353, Sup Ct *review denied* (1972); *State v. Jones,* 9 Or App 629, 498 P2d 390 (1972).

I would reverse and remand.