Argued May 20, reversed and remanded for trial July 5, 1977

STATE OF OREGON, *Appellant,*

*v.*

VERLON WRIGHT, *Respondent.*

(No. C 76-09-12658, CA 7345)

566 P2d 185

John W. Burgess, Assistant Attorney General, Salem, argued the cause for appellant. With him on the briefs were James A. Redden, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Howard Clyman, Portland, argued the cause and filed the brief for respondent.

[ 11 ]

Before Thornton, Presiding Judge, and Tanzer and Richardson, Judges.

THORNTON, P. J.

**THORNTON, P. J.**

This is a criminal appeal prosecuted by the state. The issue presented is whether the trial court erred in granting defendant's motion to suppress and destroy a handgun seized by police from defendant's automobile under the following circumstances:

About 10:30 p.m. on August 22, 1976, two Portland police officers on motor patrol received a radio call about "a possible molest of a child." When the officers arrived at the address given, they found a nine-year-old girl in her nightgown waiting outside an apartment building.

She told the officers that defendant was living with her mother and that he had come back to the apartment, having left her mother at a tavern; that after defendant had paid the babysitter, he asked her and her younger sister to "sleep with him"; that they had gotten into bed; and that he had put his arm around her, rubbed his hand on her chest and slipped his hand down into her crotch area. At that point she jumped out of bed, ran outside and had somebody call the police for her. She also told the officers that defendant had a gun in the apartment, and that she had seen it. The officers radioed for another unit because they "didn't want to go up there if there was a gun involved without some further assistance." Within a short time two more Portland police officers arrived at the apartment building.

All the officers then went to the apartment and knocked on the door. Defendant, who was apparently in bed when they knocked, came to the door. The officers explained why they were there and asked if they could come in. Defendant admitted them. One officer then advised defendant of his rights and asked him about the gun. Defendant denied that he had ever owned a gun.

The officers looked for the younger sister and found her. They also looked around the apartment for the

gun but did not find it. The officers testified that they had looked for the gun only in areas which had been in "plain view."

The officers also asked defendant about what the child had told them, but he denied that he had done what she had reported.

While the officers were at the apartment, the telephone rang. Defendant answered, and when he found out that it was the girls' mother, Mrs. Webb, calling, he gave the telephone to one of the officers. The officer told her that she had better "come on home." The officers then left defendant alone in the apartment and went outside with the two small girls.

The apartment was on the first floor, had windows and was readily accessible to the ground outside.

The officers then gave the girls to a juvenile officer for whom they had radioed and who had just arrived. The first pair of officers left at this point. The remaining two officers waited inside their police car for Mrs. Webb and prepared their report. Mrs. Webb arrived in about 10 to 15 minutes, and one of the officers explained what had happened.

Mrs. Webb "got real emotional" and "became upset." She said that defendant had been drinking, that he "was crazy," and that "he is an ex-convict and he was in prison for felony rape." Mrs. Webb continued by telling the officers that earlier that evening defendant had threatened to kill her with a gun, and that "is why they had come home apart." The officers then asked where the gun was. Mrs. Webb pointed to a car parked on the street[1] in front of the apartment building and said,

"' * * * it is right there in the car' * * *. 'That's his car and he has got a gun in there.' "

---

[1] One officer testified that defendant's automobile was parked in the parking lot next to the building. Defendant made no mention of this conflict in the testimony in his brief, nor did he challenge the repeated statement in the state's brief that defendant's automobile was in fact parked on a public street.

Mrs. Webb then took the car's keys out of her purse and gave them to one of the officers. She said that the gun was in the trunk. After the officers opened the trunk and looked inside, she said that the gun was in a toolbox "on the right-hand side" of the trunk.

The officers opened the toolbox and found a .22 caliber pistol, a bullet clip and a box of bullets. They seized all the items.

The officers then returned to the apartment with Mrs. Webb. They arrested defendant there for being an ex-convict in possession of a handgun.

The trial court ruled from the bench that the state had failed to establish exigent circumstances and allowed defendant's motion to suppress. The court did not, however, make any findings of fact.

The thrust of the state's argument may be summarized as follows: That at the time the officers searched defendant's automobile and toolbox they had probable cause to believe that defendant was an ex-convict and was in possession of a handgun, and that the gun, which was evidence of the crime, was inside defendant's automobile. The state also argues alternatively that there was no need for a search warrant because (1) exigent circumstances also existed at that moment and (2) the officers did not need to obtain a search warrant regardless of whether exigent circumstances existed because (a) Mrs. Webb consented to a search of the auto and (b) the officers were justified in seizing the gun for their own safety and for her safety, in view of his threat to kill her.

In answer to the above points, defendant argues first, that the officers did not have probable cause to search defendant's auto without a warrant because of the questionable reliability of Mrs. Webb's statements at the scene due to her disturbed mental state. In view of this the officers should have corroborated the accusations of Mrs. Webb before acting on them. Defendant cites *State v. Branch,* 13 Or App 248, 508

P2d 254 (1973), for the proposition that although hearsay may be used as a basis for the probable cause, it is not a substitute when more direct evidence is available. Second, even assuming probable cause arguendo, the evidence fails to establish exigent circumstances which would dispense with the necessity of a warrant.

■ We conclude that the state established probable cause to search defendant's auto without a warrant at the time and in the manner done in the case at bar. *Chambers v. Maroney,* 399 US 42, 90 S Ct 1975, 26 L Ed 2d 419 (1970). Defendant's reliance upon *Branch* is misplaced. Unlike in *Branch,* here the police were not dealing with hearsay information. The child told the police face-to-face not only that defendant had sexually molested her shortly before but that he had a gun in the apartment. When her mother arrived at the scene the mother told the police directly that defendant was an ex-convict and was in possession of a pistol. This served to corroborate the child's statement earlier that defendant had a gun, though the child thought it was somewhere in the apartment. Mrs. Webb, however, was able to guide the police to its exact location. The above information was sufficient to establish probable cause to believe that the crime of being an ex-convict in possession of a concealable weapon was being committed by defendant, and likewise probable cause to permit the police to search defendant's automobile.

We cannot accept defendant's argument that there were no exigent circumstances. On the contrary, Mrs. Webb had just told the officers that defendant was an ex-convict, that he had a pistol in his car and that he had threatened to kill her earlier in the evening with the pistol. Regardless of whether the statements of Mrs. Webb and her daughter were true, the officers had a right to rely on them. *State v. Schrag,* 21 Or App 655, 536 P2d 461, Sup Ct *review denied* (1975); *State v. Poteet,* 9 Or App 231, 495 P2d 783 (1972).

■ It is not necessarily incumbent on police officers to

seek a search warrant during the course of a continuing investigation. *State v. Basler,* 24 Or App 723, 546 P2d 1084, Sup Ct *review denied* (1976). Evidence obtained without a search warrant is not rendered inadmissible merely because an opportunity may have existed to obtain a search warrant. *State v. Elk,* 249 Or 614, 439 P2d 1011 (1968).

Before the officers went back into the apartment to speak with defendant again, and possibly arrest him, they were entitled to find out for their own safety and that of Mrs. Webb if the gun was in the automobile or in the apartment, and were justified under all the circumstances in believing that an immediate search was necessary. These circumstances included the following: the lateness of the hour; the mobility of the automobile; that defendant was not in custody and had access from his first floor apartment to the automobile; and that the evidence in question was a handgun which could endanger the officers and Mrs. Webb. *See, State v. Poole,* 11 Or App 55, 500 P2d 726, Sup Ct *review denied* (1972); *State v. Keith,* 2 Or App 133, 465 P2d 724 (1970). Certainly they were not required to stop their investigation until they could apply to a magistrate for a search warrant. *See, State v. Taggart,* 14 Or App 408, 512 P2d 1359 (1973), Sup Ct *review denied, cert denied* 419 US 877 (1974).

In *State v. Stacey,* 17 Or App 662, 523 P2d 612, Sup Ct *review denied* (1974), we upheld the warrantless seizure and search of a van which was parked on an automobile dealer's lot. In discussing defendant's similar contention of lack of exigent circumstances, we said:

> "* * * The late hour, the mobile nature of the van and the probable presence of the driver in the vicinity justified the failure to obtain a warrant. * * *" 17 Or App at 664.

In *State v. Schrag, supra* at 657, the police, acting on information from a private citizen, conducted a search of defendant's house and seized certain contraband. The information subsequently proved incorrect.

[ 17 ]

We upheld the search and seizure notwithstanding, stating *inter alia,* "the facts and circumstances known to the officers would warrant a prudent man in believing that a felony was being committed." This was the case here. *See also, State v. Poole, supra.*

*United States v. Chadwick,* 433 US 1, 97 S Ct 2476, 53 L Ed 2d 538 (1977), is distinguishable on the facts. In *Chadwick* federal agents arrested three suspected drug carriers at the Boston train station on the basis of probable cause to believe the suspects' footlocker contained marihuana. The officers waited until the footlocker had been lifted into the trunk of a waiting automobile, then arrested the suspects and took the footlocker, which was double-locked. They then took the footlocker to their downtown headquarters where they proceeded to open it without a warrant. Marihuana was found inside.

The United States Supreme Court held that the warrantless entry into the footlocker and the seizure of the marihuana violated the suspects' Fourth Amendment rights.

First, *Chadwick* did not involve the application of the so-called "automobile exception" to the Fourth Amendment's warrant clause as does the case at bar. The majority opinion points out that the footlocker search was not justified under the "automobile exception" inasmuch as a person's expectation of privacy in personal luggage is substantially greater than in an automobile. Concerning automobile searches, the court said:

"* * * [T]his Court has recognized significant differences between motor vehicles and other property which permit warrantless searches of automobiles in circumstances in which warrantless searches would not be reasonable in other contexts. [Citing cases.]

"Our treatment of automobiles has been based in part on their inherent mobility, which often makes obtaining a judicial warrant impracticable. Nevertheless, we have also sustained 'warrantless searches of vehicles . . . in cases in which the possibilities of the vehicle's being

removed or evidence in it destroyed were remote, if not non-existent.' *Cady v. Dombrowski,* 413 U.S. 433, 441-442 [93 S Ct 2523, 37 L Ed 2d 706] (1973); accord, *South Dakota v. Opperman,* [428 US 364, 367, 96 S Ct 3092, 49 L Ed 2d 1000 (1976)]; see *Texas v. White,* 423 U.S. 67 [96 S Ct 304, 46 L Ed 2d 209] (1975); *Chambers v. Maroney* [399 US 42, 90 S Ct 1975, 26 L Ed 2d 419 (1970)]; *Cooper v. California,* 386 U.S. 58 [87 S Ct 788, 17 L Ed 2d 730] (1967)." 433 US at 12.

Second, unlike the case at bar, *Chadwick* did not involve exigent circumstances. The absence of exigent circumstances was expressly noted in *Chadwick.*

Reversed and remanded for trial.