No. 46,808

STATE OF KANSAS, *Appellee,* v. LAWRENCE HEMMINGER, *Appellant.*

(502 P. 2d 791)

Opinion filed November 4, 1972.

*Ray Hodge,* of Beaty, Hodge and Wood, of Wichita, argued the cause and was on the brief for the appellant.

*David P. Calvert,* deputy county attorney, argued the cause, and *Vern Miller,* attorney general, and *Keith Sanborn,* county attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: The appellant, Lawrence Hemminger, appeals from a conviction and sentence on a charge of first degree robbery. This is the second appearance of the case in this court. The first appeal was by the state from an order granting appellant's motion

for new trial. (See *State v. Hemminger*, 207 Kan. 172, 483 P. 2d 1096.) In that appeal the order granting a new trial was reversed and the case was remanded with directions to reinstate the judgment and sentence.

Thereafter the appellant filed this appeal.

The facts surrounding the commission of the crime are set forth in *State v. Hemminger*, supra. Suffice it to say that appellant and his nephew, Harold Hemminger, were charged with robbing the Farha Red Bud supermarket in Wichita on September 20, 1964. The nephew was tried and convicted in February, 1968. (See *State v. [Harold] Hemminger*, 203 Kan. 868, 457 P. 2d 141, cert. den. 396 U. S. 1045, 24 L. Ed. 2d 689, 90 S. Ct. 696.) The appellant was tried and convicted in March, 1970.

Before examining the points raised by appellant we must dispose of the state's motion to dismiss the appeal. The state contends the notice of appeal was not filed within the statutory period of six months (K. S. A. 1968 Supp. 62-1724). This contention is without merit. The original date of the sentence was March 17, 1970. The appellant filed a notice of appeal from that judgment on April 6, 1970. This was well within the required period but that appeal was aborted by the order of the trial court granting a new trial. On the appeal by the state we ordered the original judgment and sentence reinstated in the sentencing court. Therefore the appeal time began to run from the date of receipt of our mandate by the clerk of the district court. Although the record does not disclose the date the mandate was received, our opinion was filed April 10, 1971. The date of receipt of the mandate, although not appearing in the present record, would necessarily post-date our opinion of April 10, 1971. When a judgment and sentence has been set aside in the district court and is thereafter reinstated on order of the supreme court the statutory time for appeal begins to run from the date of receipt of the supreme court mandate by the clerk of the district court. Appellant filed his second notice of appeal on August 13, 1971, well within the required period. The motion to dismiss is overruled.

We turn to the three points raised by the appellant in this appeal. The appellant contends prosecution was barred by the statute of limitations (K. S. A. 62-503). He reasons that the original complaint and warrant issued November 4, 1964, were fatally defective. The amended complaint was not filed and the alias warrant was not

issued or served upon the appellant until April 29, 1969. He argues the prosecution was not commenced on the offense within two years after its commission.

No claim of waiver has been made by the state since appellant stood mute at the preliminary hearing, and when bound over for trial he was not released on bond. When he was arraigned in the district court on the information he again stood mute and the district judge entered a plea of not guilty. He was subsequently tried and convicted.

This point calls for a review of several pertinent statutes relating to the limitation of criminal actions. These statutes provide that prosecutions for murder and treason may be commenced at any time after the commission of the offense. Another statute imposes a sixty day limitation on the prosecution of offenses which carry a penalty of not to exceed ten dollars. The third statute is the one with which we are now concerned. It reads:

"In all other cases, prosecutions for an offense must be commenced within two years after its commission." (K. S. A. 62-503.)

K. S. A. 62-504 provides:

"If any person who has committed an offense is absent from the state, or so conceals himself that process cannot be served upon him, or conceals the fact of the crime, the time of absence or concealment is not to be included in computing the period of limitation."

K. S. A. 62-505 next provides:

"Where any indictment or information shall be quashed, set aside, or judgment reversed, the time during which the same was pending shall not be computed as part of the time of the limitation prescribed for the offense."

The following events and dates are pertinent.

The offense was committed on September 20, 1964. The original complaint was verified and filed in the Court of Common Pleas at Wichita on November 4, 1964. A warrant was issued on that date. It was never served. The complaint was verified before a deputy clerk. It was signed and sealed in the name of the clerk by the deputy clerk. The warrant was issued by a deputy clerk in the name of the clerk of that court. The judge's signature did not appear on either the original complaint or the warrant.

It appears from a stipulation in the record on appeal that appellant was incarcerated in the state of Missouri from the date the original warrant was issued until he was extradited from Missouri in 1969. Apparently while the extradition proceedings were pending

an amended complaint was verified before the judge of the Court of Common Pleas in Wichita and filed in that court. An alias amended warrant was then issued in the name of the clerk of that court by a deputy clerk. The offense charged in the amended complaint and warrant remained substantially the same as the offense charged in the original complaint and warrant. He was arrested on the alias amended warrant.

Appellant was returned from the state of Missouri for preliminary hearing on or about May 28, 1969. He was then bound over for trial in the district court. The information filed by the prosecution did not set forth facts to negate an application of the two year statute of limitations. At the close of the state's case the appellant filed a motion to discharge for the reason that the offense was committed September 20, 1964, and the date of the amended complaint and warrant was April 29, 1969. This was more than four years after the offense was committed.

Appellant argued then as now that the original complaint and warrant were defective and void because the original complaint was not sworn to before a magistrate as required by K. S. A. 62-602 and the original warrant was issued by an unauthorized person, the deputy clerk of the Court of Common Pleas. Appellant contends the filing of the original complaint and the issuance of the original warrant did not amount to commencement of prosecution within the meaning of K. S. A. 62-503. He argues that since the prosecution was not commenced within two years after commission of the offense the information and the evidence upon which his conviction rests is insufficient in that the state failed to allege in the information and introduce evidence at the trial to establish his absence from the state. (See *State v. Schonenberger,* 173 Kan. 665, 250 P. 2d 777.)

When an information is about to be filed and more than two years have elapsed since the offense was committed there are two possible methods open to the prosecution to establish that prosecution of the offense is not barred under K. S. A. 62-503. First, the state may set forth facts in the information and introduce evidence to bring the case within the provisions of K. S. A. 62-504 by alleging and proving that the accused was absent from the state during the required period of time. This was not done in the present case. Second, the state may wait until the question is raised and then show by the complaint and warrant that the prosecution was commenced within two years after the commission of the offense even though the information may not have been filed within that time.

This court has repeatedly said that a prosecution is commenced by the filing of a *verified* complaint and the issuance of a warrant *in good faith*. The commencement of the prosecution, as that phrase is used in K. S. A. 62-503, does not depend upon the warrant being served. (*State v. Woolworth*, 148 Kan. 180, 81 P. 2d 43, cert. den. 317 U. S. 671, 87 L. Ed. 539, 63 S. Ct. 80; *State v. Cashman*, 174 Kan. 272, 255 P. 2d 660; *State v. Bilby*, 194 Kan. 600, 400 P. 2d 1015.)

What then is meant by the phrase, "issuance of a warrant in good faith"?

The statute in effect in 1964, K. S. A. 62-602, with certain exceptions to be noted, required that complaints in criminal cases be made to a magistrate and that such magistrate determine whether a warrant should issue. K. S. A. 62-201 listed those officers designated as magistrates. A justice of the peace was included in the list along with judges of incorporated cities.

K. S. A. 20-2002 provided that the court of common pleas in Sedgwick county should have the same jurisdiction in criminal cases as was then given to justices of the peace. The statute provided that practice, pleadings and proceedings in justice courts which were not in conflict with the provisions of the act establishing the court of common pleas should apply to the court of common pleas.

It would thus appear that the court of common pleas was a magistrate court within the contemplation of K. S. A. 62-201.

Under the authority granted in K. S. A. 20-2001 (last sentence) clerks and deputy clerks of the court of common pleas are authorized to administer oaths. This would include an oath administered while verifying a complaint. K. S. A. 20-2003 provided that "all writs and processes of every kind . . . shall be issued by the clerk" or in the name of the clerk and "in the same manner as such writs and processes are issued by the clerk of the district court." K. S. A. 62-805 relating to the district courts provided that where proceedings are commenced originally in the district court the clerk of the court shall issue the warrant.

In the present case the original complaint was verified and filed in a court having jurisdiction to entertain the complaint and issue the warrant. The original warrant was issued in the name of the clerk of the court of common pleas as authorized by the then existing statute. This leaves only the question of whether the judge of the court of common pleas was required under these former statutes to make the finding of probable cause before a warrant was issued.

Nothing appears in the record of this case to show who made the necessary finding of probable cause.

In *Shadwick v. City of Tampa*, 407 U. S. 345, 32 L. Ed. 2d 783, 92 S. Ct. 2119, it was held that clerks of a municipal court qualify as neutral and detached magistrates, so as to be authorized under the Fourth Amendment to issue arrest warrants. The court in *Shadwick* rejected any *per se* invalidation of a state or local warrant system merely because the issuing magistrate is not a lawyer or judge. There seems to be no reason why the clerk of a court may not be authorized to issue warrants on probable cause when a statute so provides.

The provisions of the present code of criminal procedure, K. S. A. 1971 Supp. 22-2101 *et seq.*, cannot be applied retroactively to the present case. Under the effective statutes relating to the commencement of prosecutions in 1964 it may not be clear whether a clerk of the court of common pleas had the statutory authority of a magistrate to determine probable cause. It was clear, however, that a clerk of the district court under K. S. A. 62-805 had that statutory authority. (See *In re Siebert*, 61 Kan. 112, 58 Pac. 971.) However, many of these former statutes have been superseded by our present code of criminal procedure and we do not believe a decision on the question would be helpful since it is not necessary to determine the issue posed by the appellant on the question of the statute of limitations.

K. S. A. 62-505 provides that where an indictment or information is defective and is quashed, set aside or judgment thereon reversed "the time during which the same was pending shall not be computed in the limitation" prescribed for the offense. Under *State v. Cashman*, supra, Syl. ¶ 5, an *invalid* prior information charging the same offense was held by this court to toll the statute of limitations, and under *State v. Woolworth*, supra, Syl. ¶ 4, the pendency of a complaint, as well as the pendency of an indictment or information was held by this court to meet the requirements of K. S. A. 62-505, so as to toll the statute of limitations. We hold that the pendency of a complaint as well as the pendency of an indictment or information meets the provisions of K. S. A. 62-505 so as to toll the statute of limitations; and if a prosecution is commenced on an offense a formal defect in the verification of the complaint or the issuance of the warrant will not prevent a tolling of the statute while the prosecution is pending in the court of issuance.

The original complaint was properly verified and filed in a court

of competent jurisdiction. The original warrant was issued in good faith in the name of the clerk of said court as authorized by the statute then existing. We conclude the pendency of the complaint filed November 4, 1964, coupled with the issuance of the warrant thereon did toll the statute of limitations during the period of time appellant was incarcerated in the state of Missouri even though the original complaint and warrant may have been defective in some particular.

Appellant's second point of error is a claim of denial of his constitutional right to a speedy trial based upon the cases of *Smith v. Hooey*, 393 U. S. 374, 21 L. Ed. 2d 607, 89 S. Ct. 575, and *Dickey v. Florida*, 398 U. S. 30, 26 L. Ed. 2d 26, 90 S. Ct. 1564.

No question is raised herein concerning the statutory provisions in Kansas requiring trial within a stated period after arraignment.

The recent case of *Barker v. Wingo*, 407 U. S. 514, 33 L. Ed. 2d 101, 92 S. Ct. 2182, more clearly defines the factors to be considered when a constitutional claim of denial of speedy trial is asserted. The high court in its opinion stated that such a claim is subject to a balancing test in which the conduct of both the prosecution and the defendant are to be weighed. Each case must be determined on its own merits. The four factors enumerated in *Barker* to be assessed by courts in determining whether a particular defendant has been denied his right to a speedy trial are (1) length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. The high court stated that none of these factors were to be given controlling weight. They must be considered together with all relevant circumstances. The demand-waiver doctrine was discredited as the controlling factor in such cases.

Our cases of *State v. Stanphill*, 206 Kan. 612, 481 P. 2d 998; *State v. Brooks*, 206 Kan. 418, 479 P. 2d 893 and *State v. Samuels*, 209 Kan. 616, 498 P. 2d 23, are generally in accord with the federal case law in this area with the possible exception of our application of the demand-waiver doctrine. It is possible under the standards in *Barker* we have accorded too much weight in some cases to failure of the defendant to request a trial. However, it remains one of the four important factors to be considered.

In the present case the offense occurred on September 20, 1964. A warrant for appellant's arrest was issued in November, 1964. At that time appellant was in custody of the federal authorities and was later incarcerated in Missouri for another crime. He wrote to

the authorities in Kansas requesting information on the charges pending but made no request for trial. He knew of the pendency of the charges. Over four years elapsed before he was extradited at the request of the state and brought to Kansas to stand trial. He was tried and convicted within nine months after his return to Kansas. Over five years elapsed from the time of the offense to the date of his conviction. His absence from the state during the major portion of this period and his failure to demand a speedy trial appear to be the primary reasons for the delay. He did not assert his right to a speedy trial and he refused to waive extradition.

The remaining factor to be considered is the prejudice, if any, to the defendant by reason of the delay in prosecution. His claim of prejudice from the lapse of time relates to witnesses unavailable at the trial. It is possible the state was also prejudiced in this regard. Subpoenas were issued to the Sheriff of Sedgwick County for four witnesses. They were returned unserved. The witness Houser was in the armed services. Officer Thompson was no longer on the police force and had moved from the city. Witnesses Logue and Rutledge were not found in the county. At the hearing on the motion for a new trial appellant produced an affidavit by Houser, who was one of three eyewitnesses to the robbery. In the affidavit Houser stated, after examining a picture of the appellant, he was certain appellant did not perpetrate the robbery. Two other eyewitnesses to the robbery had previously testified orally at the trial and both had identified appellant as one of the two persons who robbed the store. There is nothing in the record to indicate what efforts were made to secure the testimony of Houser at the trial.

We are not advised as to the nature of the testimony of the other three witnesses. They apparently resided in Wichita at the time of the robbery. However, the defense of the appellant was in the nature of an alibi. None of the absent witnesses were listed by appellant in his notice of alibi. The witnesses listed to support his alibi were Allen Morgan and Harold M. Hemminger. Harold M. Hemminger had been previously convicted as an accomplice in the robbery. Both Harold and Lawrence Hemminger testified at the trial that they were in the state of Missouri with Allen Morgan when the robbery occurred. In addition to the personal identification of appellant by eyewitnesses Burlison and Gamble, a used car dealer, Jack Newby, testified to a sale of a used car to appellant on September 23, 1964, at Eureka, Kansas. Eureka is approximately fifty miles east of Wichita.

A failure of a defendant to assert his right to a speedy trial makes it difficult for him to prove that he was denied his constitutional right to a speedy trial. In the present case no request or demand was made by appellant. After considering the length and reasons for the delay, the lack of demand for trial and the prejudice claimed by appellant we conclude in this case appellant was not denied his constitutional right to a speedy trial.

The final contention of appellant is that the trial court erred in refusing to admit testimony by a psychiatrist as to his conclusions on examining appellant after administering sodium pentathol (truth serum). The psychiatrist would have testified that as a result of the sodium pentathol tests he was of the opinion that appellant was telling the truth when he said that he was in the state of Missouri when the robbery occurred and that he did not commit the crime.

Truth serum tests occupy much the same position as lie detector tests and in general courts have never admitted the results of such tests into evidence for the purpose of proving the truth of the matters asserted by the defendant. (*State v. Lee,* 197 Kan. 463, 419 P. 2d 927, cert. den. 386 U. S. 925, 17 L. Ed. 2d 797, 87 S. Ct. 900, reh. den. 386 U. S. 978, 18 L. Ed. 2d 142, 87 S. Ct. 1170; 29 Am. Jur. 2d Evidence, § 831; 22A C. J. S., Evidence, § 645 [2].)

The authorities are not in agreement, however, as to the admissibility of statements made to a psychiatrist by a defendant under the influence of truth serum when the statements are not offered for the purpose of proving the truth of the matter asserted therein. In the recent case of *State v. Chase,* 206 Kan. 352, 480 P. 2d 62, Mr. Justice Kaul examined the diverse authorities on that subject. In *Chase* this court held it was not proper to admit such taped statements of a defendant's responses to questions posed by a psychiatrist after administering a truth serum. The taped responses in *Chase* were not offered to prove the truth of the assertion but to bolster and lend credence to the testimony of the expert on the issue of insanity. Our holding in *Chase* lends strong additional support for holding the testimony inadmissible in the present case.

In the case at bar the testimony of the psychiatrist was offered to prove the truth of matters asserted by the defendant and it is universally held that such testimony is not admissible. (See *State v. Thomas,* 206 Kan. 603, 611, 481 P. 2d 964.) It is the jury's function to pass on the credibility of the witnesses. We see no reason

to overturn this well-established concept of the jury's function. Medical science is not an exact science. The elements of uncertainty and speculation in the testimony of experts may be illustrated by comparing the testimony of opposing psychiatrists or opposing medical doctors during the ordinary trial. Ours is a trial by jury not a trial by experts. Nothing appears in the record before us to change our position with regard to lie detector and truth serum tests. The results of such tests were not admissible in this case to prove the truth of the matters asserted by the appellant. They were properly excluded by the trial court.

We have examined all points raised and the judgment is affirmed.