Argued March 26, reversed and remanded April 9, 1973

STATE OF OREGON, *Respondent, v.*
DENNIS ALLEN (C-72-07-2134), *Appellant.*

STATE OF OREGON, *Respondent, v.*
ALONZO REED (C-72-07-2135), *Appellant.*

508 P2d 472

*Gary D. Babcock,* Public Defender, Salem, argued the cause and filed the brief for appellants.

*John W. Burgess,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before Schwab, Chief Judge, and Langtry and Fort, Judges.

LANGTRY, J.

Defendants appeal from conviction of criminal activity in drugs. ORS 167.207. They claim error in the denial of a motion to suppress evidence produced by a warrantless search and seizure at the time of their arrest on July 8, 1972.

The essential facts in evidence are: An investigation had been carried on by police for several weeks concerning four men who, a reliable informant had said, had been dealing in heroin at Washington Park. They were reported to have moved from one motel to another. At the Jamaica Motel where the arrests were made two each of them occupied Rooms 43 and 45 which were approximately 55 feet apart. During the day of July 7 another informant reported making a purchase of heroin from these two defendants at Room

45. Later the same day female Officer Kelley made a purchase at Room 43 from a female occupant who said that the men who lived in that room would be back later if Kelley wished to make a further purchase. At about 1:00 a.m. Officer Kelley returned to Room 43, leaving several police officers on watch outside. The two male occupants were present and she made a purchase of heroin from them. When she refused a free sniff of heroin the men appeared to become suspicious. She reported this to the other officers immediately upon leaving the room. They concluded that loss of evidence was imminent in Room 43, which dictated immediate arrest of the two males and search of the room. They went into Room 43 and found one of the male occupants was locked in the bathroom flushing balloons of heroin down the toilet. They recovered some of this evidence and placed the occupants under arrest.

Substantial noise was involved in these proceedings and at that time the telephone in the room sounded. The officers did not answer the call but concluded it must be the occupants of Room 45; defendants in these appeals, calling to see what the commotion was about. Thus, they felt impelled by the exigencies of that circumstance to make an immediate search and a possible arrest in Room 45. They gained admittance there by use of a manager's key. The defendants were asleep on their beds and marihuana was in sight. They seized the marihuana, placed the defendants under arrest after frisking them and secured them outside the room. Then they proceeded to search the room and in a concealed place they found the heroin which is the subject of controversy in these appeals.

▪ 1. The first point defendants make is that the police had information from a reliable informant

earlier in the day that heroin was being dealt from Room 45 and that they should have obtained a warrant at that time for a search and possible arrest rather than awaiting the circumstances which arose. We do not agree with this contention. The mere fact that a police officer may have probable cause to get a warrant or make an arrest at a particular point does not mean he must stop his investigation and go for the warrant or make the arrest. This is the rule as we understand it from *Hoffa v. United States,* 385 US 293, 87 S Ct 408, 17 L Ed 2d 374 (1966), *rehearing denied* 386 US 940 (1967). *See also State v. Murphy,* 2 Or App 251, 258, 465 P2d 900, Sup Ct *review denied, cert denied* 400 US 944 (1970). It would be highly unreasonable to place the police in the position of having to guess whether requisite probable cause begins at a particular point. In this regard *see United States v. Harris,* 403 US 573, 91 S Ct 2075, 29 L Ed 2d 723 (1971), where probable cause for issuing a search warrant was in question in the United States Supreme Court. Four members disagreed as to the existence of probable cause in that case and the five-judge majority needed five separate opinions to express its reasons for believing there was probable cause. If such uncertainty exists in this type of question among the judges of the highest court in the land, we should not expect greater acumen among policemen.

We have examined the principal precedents relied upon by the defendants: *Trupiano v. United States,* 334 US 699, 68 S Ct 1229, 92 L Ed 1663 (1948); *United States v. Resnick,* 455 F2d 1127 (5th Cir 1972); and *Niro v. United States,* 388 F2d 535 (1st Cir 1968), and we are not persuaded that they indicate a contrary rule largely because they do not deal directly with the situation at bar. In each of those cases the

police intended to conclude their investigation in the manner in which they did so, by making a warrantless search. In each, they could have obtained a warrant. Here, the police were not sure they had probable cause and were continuing their investigation when exigent circumstances arose. Further, their investigation had the potential of involving more offenders if it continued.

■ ■ A more serious question is presented in the cases at bar with reference to whether, once the police officers were in Room 45 and they had found marihuana in plain sight and had arrested and secured the defendants, they had authority to proceed with a more thorough search of the room. Law enforcement officers must secure and use search warrants whenever reasonably practicable. *State v. Brothers*, 4 Or App 253, 478 P2d 442 (1970); *State v. Keith*, 2 Or App 133, 465 P2d 724, Sup Ct *review denied* (1970). In *Keith* we said:

> " '* * * [A] warrantless search is unreasonable unless it is impracticable for the police officer to obtain a search warrant * * *.' " 2 Or App at 140-41.

In *Chimel v. California*, 395 US 752, 89 S Ct 2034, 23 L Ed 2d 685, *rehearing denied* 396 US 869 (1969), the United States Supreme Court limited the scope of a search incident to an arrest to that which is necessary to protect the police and prevent destruction of evidence.[1] Here, the defendants were found sound asleep, they were immediately arrested for possessing what was in plain sight, and were frisked and moved from

---

[1] In the dissenting opinion in Chimel v. California, supra, in which the current United States Supreme Court majority's in-

the motel room. The marihuana was seized, and it justified the arrest. In *Chimel* the additional search of the house for stolen coins (which were turned up) was held to be unreasonable where the defendant was in custody and presented no more threat to the police. In that case there was even the possibility that the defendant's wife, who remained behind in the home, might have disposed of the coins which were found. In the

terpretation of search and seizure law in the context of the cases at bar is expressed, Mr. Justice White said:

"* * * The Court has always held, and does not today deny, that when there is probable cause to search and it is 'impracticable' for one reason or another to get a search warrant, then a warrantless search may be reasonable. *E. g.* even *Trupiano v. United States*, 334 U. S. 699 (1948). This is the case whether an arrest was made at the time of the search or not.

"This is not to say that a search can be reasonable without regard to the probable cause to believe that seizable items are on the premises. But when there are exigent circumstances; and probable cause, then the search may be made without a warrant, reasonably. An arrest itself may often create an emergency situation making it impracticable to obtain a warrant before embarking on a related search. Again assuming that there is probable cause to search premises at the spot where a suspect is arrested, it seems to me unreasonable to require the police to leave the scene in order to obtain a search warrant when they are already legally there to make a valid arrest, and when there must almost always be a strong possibility that confederates of the arrested man will in the meanwhile remove the items for which the police have probable cause to search. This must so often be the case that it seems to me as unreasonable to require a warrant for a search of the premises as to require a warrant for search of the person and his very immediate surroundings.

"This case provides a good illustration of my point that it is unreasonable to require police to leave the scene of an arrest in order to obtain a search warrant when they already have probable cause to search and there is a clear danger that the items for which they may reasonably search will be removed before they return with a warrant * * *." 395 US at 773-74.

This dissent, joined in by Mr. Justice Black, obviously does not express the law as it has most recently been interpreted.

cases at bar no one remained behind who could have disposed of further contraband in the room. With 12 police officers present there was no problem in securing the room by leaving a guard present while the warrant was being obtained. When the police arrested the defendants and removed them from the room, the exigent circumstances that would justify a warrantless search no longer existed.

While we recognize that, as the trial court concluded, the entire matter was one transaction, the transaction could have been broken into component parts as the Supreme Court said must be done in circumstances such as this in the *Chimel* decision. We hold that the marihuana was properly seized and that the motion to suppress was correctly overruled in that respect but that it should have been sustained with reference to other things which were found in concealed places in the further search of Room 45 after defendants had been secured.

Reversed and remanded.

FORT, J., specially concurring.

The majority points out that earlier in the day of July 7, an informant purchased heroin from the defendants in Room 45. It is conceded that this informant was reliable. It is clear that at that point the police had ample probable cause to obtain a search warrant for Room 45 and an arrest warrant for the defendants. No effort was made to obtain either a search or an arrest warrant. Instead, the police at 1:00 a.m. on July 8, with the manager's key, let themselves into Room 45, arrested the defendants while they were asleep in bed, and after securing them made the search which disclosed the heroin here sought to be suppressed. Rooms 45 and 43 were not adjoining rooms.

The majority concludes the entry into Room 45 without a warrant was lawful for the reasons set forth in the opinion. I disagree. In my view there were no exigent circumstances which would support the failure to have secured a warrant during the afternoon or evening of July 7. I am, however, in agreement that the search of Room 45 was unlawful for the reasons stated by the majority as well.