Argued June 20, affirmed August 6, petition for rehearing
denied August 30, petition for review denied February 20, 1974

STATE OF OREGON, *Respondent, v.* MICHAEL
PATRICK TAGGART (No. C 70-11-0387 Cr),
*Appellant.*

512 P2d 1359

*Robert C. Cannon,* Deputy Public Defender, Salem,

argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*Thomas H. Denney,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and FOLEY and THORNTON, Judges.

THORNTON, J.

Defendant was convicted after jury trial of assault and robbery while armed. Former 163.280.[1] He appeals, contending that the trial court erred:

(1) In denying defendant's motion to suppress evidence seized as a result of police entry into his motel room on November 3, 1970, and a search of that room on November 4;

(2) In denying defendant's motion for a new trial based on newly discovered evidence;

(3) In prohibiting testimony from an examining psychiatrist as to statements made by defendant while under a so-called "truth serum"; and

(4) In instructing the jury that the agreement of 10 members was sufficient to convict defendant.

---

[1] Former ORS 163.280 provided:

"Any person who assaults another with intent to kill the person assaulted, or any person, being armed with a dangerous weapon, who assaults another and who robs, steals or takes from the person assaulted any money or other property which may be the subject of larceny, shall be punished upon conviction by imprisonment in the penitentiary for life or for any lesser term. The lesser punishment provided by this section shall be exercised only in those cases in which, in the judgment of the court, leniency should be shown." (Repealed, Oregon Laws 1971, ch 743, § 432, p 2002.)

The essential facts are as follows:

Early in the evening of November 2, 1970, two armed men wearing ski masks held up the Portland business office of the Plaid Pantry grocery chain. Several office employes identified defendant, who had previously been an employe of the firm, as one of the two armed robbers.

The following evening, November 3, defendant, while driving along a Portland street, was arrested for failure to have a valid driver's license. Just prior to being placed in the patrol car, defendant passed a sizeable roll of currency to a woman companion who had been in the car with him. This woman was later identified as Susan Bliss, with whom defendant had been living. Miss Bliss was not detained.

After defendant had been transported to jail, the officers found a key to room 42 of the Jamaica Motel under the rear seat of the patrol car. The officers immediately turned over the key to detectives investigating the robbery. The detectives thereupon went to the motel, contacted the desk clerk and learned that the room was registered to "Erin O'Brien." However, both the residence address and car registration shown on the motel registration card were those of defendant. The clerk was also able to identify the picture of defendant shown her by the detectives as that of the individual who had previously registered as "Erin O'Brien." She also told them that a young woman was presently in the room. The detectives then proceeded to the room where they knocked and identified themselves as police officers, in response to inquiry by a female voice from within. At this point, the detectives heard considerable commotion and scurrying about within the room. Without waiting

further they let themselves into the room, using the key previously recovered from the rear seat of the patrol car.

Inside the room the detectives found only Miss Bliss, whom they thereupon arrested for violation of the "hotel ordinance."[2] They seized a bank coin bag, of the type reportedly used in the Plaid Pantry robbery, which was lying on top of an overnight case belonging to Miss Bliss. Miss Bliss was searched at the women's jail and $1,676 in currency was recovered from her person. Several of these bills were subsequently identified as being among those taken in the robbery.

On the following day, November 4, 1970, police officers obtained the consent of the management of the motel to conduct a search of room 42. This search was conducted just prior to the management's cleaning of room 42 preparatory to making the room available for rental. Defendant's belongings were packed and placed in a storage room.

The motel owner testified that defendant rented the room on October 28, paying only for that night. On October 31, defendant paid the rent due for the 29th through the 31st, and again on November 2 paid the rent due for the nights of the 1st and 2nd. This was the last payment made prior to the search on November 4. The motel owner testified that she would have removed defendant's belongings on November 3 or 4, since he had not paid the room rent, if another party had been available to rent the room. She did not give defendant notice to vacate. As already noted she had previously accepted late payments of the rent due.

---

[2] A municipal ordinance declaring it unlawful for two unmarried individuals of the opposite sex to be registered in the same hotel or motel room.

■ In support of his first assignment, defendant argues that while the police had probable cause on November 3 to search his motel room, a warrant was necessary to authorize such search. From this premise he argues that the warrantless entry by the officers on November 3 was unlawful and thus taints all that stemmed therefrom, including the seizure of the money bag, the arrest and search of Miss Bliss, the seizure of the currency from her person, and the subsequent search of the room on November 4. We cannot agree.

The evidence establishes that at the time the room key was discovered, the investigation was only in its preliminary stage. The second robber was still at large. The proceeds of the robbery had not been located. The defendant had not yet been arrested for robbery. Therefore the discovery of the room key in the patrol car, together with the knowledge that the police saw defendant pass a large roll of currency to his woman companion just prior to being placed in the car, justified the action of the detectives in going immediately to the Jamaica Motel to pursue their investigation. As the court stated in *State v. Allen/Reed,* 12 Or App 633, 508 P2d 472 (1973):

> "* * * The mere fact that a police officer may have probable cause to get a warrant or make an arrest at a particular point does not mean he must stop his investigation and go for the warrant or make the arrest. This is the rule as we understand it from *Hoffa v. United States,* 385 US 293, 87 S Ct 408, 17 L Ed 2d 374 (1966), *rehearing denied* 386 US 940 (1967). *See also State v. Murphy,* 2 Or App 251, 258, 465 P2d 900, Sup Ct *review denied, cert denied* 400 US 944 (1970) * * *." 12 Or App at 636.

In *Allen/Reed,* this court held that police officers were justified in using the manager's key to enter

defendant's motel room, where the circumstances of their ongoing investigation led them to believe that delay would risk the loss of evidence and/or the escape of the suspects. Evidence in plain sight was seized. That evidence was held to be admissible; however, other evidence discovered as a result of a later search was not, inasmuch as the officers could have obtained a search warrant at that point, without the risk of loss which justified their initial entry. *Allen/Reed* at 639.

■ In the case at bar the information already known to the detectives, together with the response to their knock and announcement, gave the detectives a reasonable basis for concluding that an immediate entry was required. We hold that exigent circumstances existed which justified the detectives in making such entry. *State v. Allen/Reed,* supra; *State v. Steffes,* 2 Or App 163, 465 P2d 905, Sup Ct *review denied* (1970).

■ Defendant also challenges the warrantless search of room 42 made on November 4, without his consent, but with the consent of the motel management, citing *State v. Dougherty,* 8 Or App 267, 493 P2d 1383 (1972), and *State v. Taggart,* 7 Or App 479, 491 P2d 1187 (1971). Defendant argues that on November 4 he had a reasonable expectation of privacy in room 42, even though he had not paid rent after November 2. Therefore the consent given by the motel management, and the subsequent search by police officers on November 4, violated his Fourth Amendment rights.

In the prior decision involving this same defendant and this same alleged robbery (*State v. Taggart,* 7 Or App 479, 491 P2d 1187 (1971)), this court dealt with a challenge by defendant to a warrantless search of his apartment in another part of the city, based on consent obtained from his landlady. There the de-

fendant was one month in arrears on his monthly rental. We held that challenged search was unlawful. Expressly limiting our holding to leased residential premises,[3] this court said:

"* * * [A] tenant of leased residential premises, whose landlord has acquiesced in the late payment of rent then due, and who does not know or have reason to know that the landlord has decided to terminate his tenancy, continues to have a reasonable expectation of privacy." *State v. Taggart,* supra at 483.

*State v. Dougherty,* supra, reached the question of a hotel employe giving valid consent to a warrantless search of a guest's room. In *Dougherty* the guest rented a room for a week, paying in advance. He was told that he must vacate at the end of the week and when he did not, a hotel employe admitted police officers to the room. Under these circumstances, the court found that whatever subjective expectation of privacy the guest may have had was not objectively reasonable. *Dougherty* at 271.

The present case differs from *Dougherty* in that defendant was not given notice to vacate. However, defendant was renting room 42 on a day-to-day basis and was two days in arrears at the time the owner consented to the search. Room 42 could have been rented to someone else any time after the posted checkout time on November 3, when the rent expired.

*Dougherty* was followed in *State v. Cox,* 12 Or App 215, 505 P2d 360, Sup Ct *review denied* (1973),

---

[3] "Our holding is limited to leased residential premises, as distinguished from hotel and motel rooms where the rule might be different." State v. Taggart, 7 Or App 479, at 483, n 5, 491 P2d 1187 (1971).

where a warrantless search was consented to by the hotel management one day after the paid rent expired. The occupants of that room had not been given actual notice to vacate; however, written notice that the rent expired on a certain day had been placed in their box at the hotel desk prior to the expiration of the rent. This court said the defendant's allegation of unlawful consent was without merit. *Cox* at 224.

In his concurring opinion in *Katz v. United States*, 389 US 347, 88 S Ct 507, 19 L Ed 2d 576 (1967), Mr. Justice Harlan said that the determination of whether a claimant had a reasonable expectation of privacy involves a twofold requirement. The first is that the claimant must have a subjective expectation. The second is that this "expectation be one that society is prepared to recognize as 'reasonable.' * * *" 389 US at 361; *State v. Stanton,* 7 Or App 286, 293-94, 490 P2d 1274 (1971).

Assuming that defendant had a subjective expectation of privacy, *see Stanton* at 295, the issue to be resolved is whether, at the time of the management's consent, defendant's expectation of privacy in room 42 was objectively reasonable.

In *United States v. Croft,* 429 F2d 884 (10th Cir 1970), the court reached the conclusion that a motel manager could validly consent to a warrantless search of a guest's room after the paid rental period for that room had expired, notwithstanding the guest had not checked out. In *Croft,* the defendant argued that the warrantless search of his motel room violated his Fourth Amendment right to privacy. The court held that the defendant did not have standing to challenge the search,

"* * * for the basis of defendant's complaint

must rest on some invasion of his right of privacy. And although it is clearly established that a guest in a hotel or motel room is entitled to protection against unreasonable searches and seizures [citing cases], still the protection is dependent on the right to private occupancy of the room. When the rental period has elapsed, the guest has completely lost his right to use the room and any privacy associated with it. The manager of the motel may then freely enter the room, rent the room to others, and remove any belongings left in the room. * * * Since after the rental period expires a guest has no right of privacy, there can be no invasion thereof." *United States v. Croft*, supra at 887; *accord, United States v. Cowan*, 396 F2d 83 (2d Cir 1968).

The analysis of *Croft* is applicable to the present case. Defendant was renting room 42 on a day-to-day basis. Even though the motel clerk had previously accepted late payment of the room rent, defendant knew or had reason to know that his room could have been rented to another guest at any time after check-out on November 3, unless he made other arrangements or paid the rental rate in advance. Whatever subjective expectation of privacy defendant may have had was not objectively reasonable under these circumstances. *See, State v. Cox; State v. Dougherty; State v. Stanton; State v. Taggart*, all supra. The search of defendant's motel room on November 4, 1970, was lawful, based on the consent of the motel management. *United States v. Croft*, supra.

Defendant's second assignment of error alleges that the trial court should have granted his motion for a new trial based on newly discovered evidence. Defendant's new evidence consists of: (1) an offer of proof that one Burt Bas falsely executed a sworn affidavit, which had been admitted into evidence by stipu-

lation, and (2) an affidavit, executed in open court, by one John Goodall, purportedly confessing to the Plaid Pantry armed robbery, and stating that defendant did not participate with him.

■ At the hearing on defendant's motion for a new trial, the court found that Bas, by his own testimony, was, and had been, generally available to testify as a witness during the trial and that the defense did not lay the proper foundation of due diligence in its efforts to locate Bas. An offer of proof was made that Bas's prior sworn affidavit (that he could identify certain of the bills recovered from the person of Miss Bliss as coming from the November 2 Plaid Pantry robbery) was false and that he could not so identify the bills.

The trial court properly denied defendant's motion for a new trial in so far as it was based on the above offer of proof because there was no showing of due diligence in efforts to secure Bas's testimony. *See, State v. Ellis,* 232 Or 70, 89, 374 P2d 461 (1962); *State v. Clayton,* 11 Or App 534, 504 P2d 139 (1972); *State v. Williams,* 2 Or App 367, 468 P2d 909 (1970); *cf., State v. Johnson,* 250 Or 599, 444 P2d 10 (1968).

■ Defendant also contends that the affidavit and confession of John Goodall, a friend of defendant, is totally exculpating, and for this reason a new trial should have been granted.

Two armed masked men took part in the robbery. Goodall admitted that he was one of the two robbers, but refused to identify the second man, saying only that it was not defendant. According to Goodall's unsworn testimony he was the second man to enter the Plaid Pantry office. Witnesses identified defendant as the first man to enter the office.

Although this new evidence was discovered after trial and could not have been discovered prior thereto, the trial court found that this evidence would probably not change the result of the trial, based primarily on the identification of defendant by witnesses who knew him. We hold that the trial court did not abuse its discretion in denying defendant's motion for a new trial. *State v. Johnson; State v. Ellis; State v. Williams,* all supra.

■ Defendant's third allegation of error is that the trial court erred in not admitting testimony by defendant's psychiatrist relating to statements made by defendant while under the influence of a drug identified both as sodium bivital and sodium barbitol—a "truth serum." At trial defendant offered these statements as corroboration of his story and as "excited utterances." On appeal defendant changed his theory on this point and argued that these statements, while hearsay, should be admitted as an exception to the hearsay rule as tending to show a state of mind. Defendant further argues that these statements made under the influence of "truth serum" are involuntary, thereby indicating that they are truthful.

The conclusion that the statements must be true since they were made involuntarily does not necessarily follow. Referring to the use of "truth serum," one commentator writes:

> "The authorities agree that the subject pours out both fact and fancy. Dr. Lorenz observes: 'Much care must be exercised by the experimenter to evaluate the results. He must discriminate, *if possible,* what is the product of fantasy and what of fact.'
>
> "Although some persons retain their characteristic defenses even under influence of the drug, the

degree and effect of suggestibility are greatly heightened.

"In psychotherapy, the physician's skill depends on his obtaining recitals of internal, external, and mixed events, and on his ability to suggest developments and reconciliations. In law, we reject for untrustworthiness a method of interrogation which mingles external events with imaginary occurrences and shapes the answers of the subject to the suggestions of the examiner. Thus, however striking their medical uses, the drugs are not 'truth serums'; they dissolve inhibitions and tend to stimulate unrepressed expressions of external fact, of fancy, and of suggestion." Despres, *Legal Aspects of Drug-Induced Statements,* 14 U Chi L Rev 600, 605 (1946-47).

This point is aptly summarized in McCormick, Evidence 507, 509, § 208 (2d ed Cleary 1972):

"* * * '[T]ruth serum' is not only not a serum, but persons do not tell only truth under its influence * * *."

Our Supreme Court has held that testimony as to statements made by a defendant while under hypnosis is not admissible because the value of such hearsay is "outweighed by the danger that the jury will be confused on other principal issues of the case." *State v. Harris,* 241 Or 224, 241, 405 P2d 492 (1965). *See also, State v. Chase,* 206 Kan 352, 480 P2d 62 (1971); *State v. White,* 60 Wash2d 551, 374 P2d 942 (1962), *cert denied* 375 US 883 (1963); Annotation, 23 ALR2d 1306, 1310 (1952), and 19-24 ALR2d Later Case Service 730-31 (1970).

In *State v. Hemminger,* 210 Kan 587, 502 P2d 791 (1972), the trial court excluded testimony by a psychiatrist regarding his conclusions drawn from an examination of the defendant while under sodium

pentathol ("truth serum"). The psychiatrist would have testified that, as a result of his sodium pentathol tests, he was of the opinion that the defendant was telling the truth, that he did not commit the crime charged. Relying on *Chase,* the Kansas Supreme Court held that the testimony was inadmissible. 210 Kan at 595, 502 P2d at 798.[4]

In light of the above, we conclude there was no basis for admitting the psychiatrist's testimony concerning statements made by defendant while under the influence of a "truth serum." *State v. Harris, supra; State v. Hemminger,* supra.[5]

■ Defendant's final assignment relating to the 10-2 verdict has already been decided against defendant's contention in *Apodaca v. Oregon,* 406 US 404, 92 S Ct 1628, 32 L Ed 2d 184 (1972). *See also, State v. Gann,* 254 Or 549, 463 P2d 570 (1969).

Affirmed.

----

[4] For an excellent discussion on the subject of "truth serum," *see,* State v. Sinnott, 24 NJ 408, 132 A2d 298 (1957); Dession, Freedman, Donnelly and Redlich, *Drug-Induced Revelation and Criminal Investigation,* 62 Yale L J 315 (1953).

[5] In State v. Suggs, 13 Or App 484, 511 P2d 405 (1973), similar testimony was received in evidence without objection.