Argued March 18, reversed and remanded May 12,
reconsideration denied June 18, petition for review allowed
August 6, 1975

# STATE OF OREGON, *Appellant, v.*
# GARY FRANCIS HICKMANN (No. 18692),
## *Respondent.*
### 534 P2d 1153

*W. Michael Gillette,* Solicitor General, Salem, argued the cause for appellant. With him on the brief was Lee Johnson, Attorney General, Salem.

*John K. Hoover,* Deputy Public Defender, Salem, argued the cause for respondent. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Before SCHWAB, Chief Judge, and FORT and LEE, Judges.

FORT, J.

Defendant was charged with criminal activity in drugs, ORS 167.207. He filed a motion to suppress evidence seized by the police coincidentally with his warrantless arrest within his domicile and search thereof. The court allowed the motion and the state appeals, ORS 138.060(4).

In such an appeal it is elementary that the findings of fact of the trial judge, if supported by substantial evidence, are binding on this court. *State v. Johnson/Imel,* 16 Or App 560, 571, 519 P2d 1053, Sup Ct *review denied* (1974). It is also clear that a search of a man's domicile and entry therein in the absence of a warrant are per se unreasonable and that the state has the burden to establish the legality of the search. *State v. Miller,* 269 Or 328, 524 P2d 1399 (1974); *State v. Allen/Reed,* 12 Or App 633, 508 P2d 472 (1973).

The hearing on the motion to suppress was consolidated with hearings on two other motions involving evidence seized from two other defendants not present in the Hickmann domicile or residents thereof but living in the same general area. The trial court

opinion allowed all three motions. The three were consolidated for appeal in this court. Although appealing originally from all three, the state has now moved this court "after review of the record herein" to dismiss the appeal in the other two. Accordingly, two of the three consolidated for the hearing have been dismissed.

No findings of fact are contained in the order appealed from here granting the motion to suppress. The court did, however, file a memorandum opinion dealing with all three cases in which it discussed certain aspects of the evidence relating to this case. From this and from those facts set forth in the briefs as shown by the evidence and not disputed, we summarize the following factual situation.

On Saturday morning, May 11, 1974, the state obtained a search warrant for narcotics from the municipal judge for certain premises in Bend occupied by Kathy Huyck. Marihuana and peyote were found and she was arrested. She then informed the police that she had bought the marihuana from defendant, that he lived in an isolated area several miles outside the city in a tepee-like structure and usually left the area promptly after making a sale. The court found this was defendant's dwelling. Ms. Huyck, who was under arrest, could not furnish clear directions but agreed to guide the police and the deputy district attorney to Hickmann's tepee. It was located at the end of a dead-end road. No effort was made by the state to obtain either a search warrant of the Hickmann tepee for narcotics or a warrant of arrest for defendant. Upon arrival at the scene the officers knocked on the closed entrance flap of the tepee. They did not identify themselves as police officers, nor did they state the reason for their presence. There is a direct conflict in the testimony as to whether defendant, who was inside the closed tepee, authorized

entry. The court made no finding of fact concerning this. The police entered and saw defendant kneeling in the tepee with a package in front of him. He was taken into custody and the package, which contained marihuana, was seized. *See: State v. Bracco,* 15 Or App 672, 517 P2d 335 (1973), Sup Ct *review denied* (1974), and cases therein cited.

The state contends that the warrantless seizure was justified by exigent circumstances. The trial court disagreed. It found that there was ample probable cause to have obtained a warrant, both for the arrest of defendant and search of his tepee, that the state made no showing that either the district judge or the circuit judge was not available that Saturday morning, and indeed made no effort to ascertain that fact.

The crucial question in this case is whether or not the entry by the police into defendant's home was authorized. The state relies on *State v. Bracco,* supra. There, however, no question was involved concerning the validity of the police entry into the defendant's hotel room. That case is authority, once lawful entry without a warrant has been gained to premises, for the search within the defendant's immediate vicinity for drugs when seized incident to his lawful arrest for illegal possession of narcotics. Applied here, if the entry by the police into defendant's domicile was lawful, then his arrest and the search and seizure of the package by which defendant was kneeling at the time of entry were valid.

Furthermore, in *Bracco* it was clear that probable cause to arrest the defendant or to search for narcotics did not exist until the paid police informant exited the room and told the police the narcotics were there. Since the informant was in the room at the invitation of the defendant and, having stepped out

for a moment, simply went back into it with the police, no question concerning the entry was involved.

■ Here, probable cause to arrest defendant and to search his residence, as the court found, existed when the police were told by Ms. Huyck in Bend that defendant was the source of the narcotics for possession of which she had just been arrested. It is conceded there was no lack of available police there present to enable one of them or the deputy district attorney to seek a warrant forthwith for the arrest of defendant or for the search of his premises, or both. When obtained, knowledge thereof could have been transmitted by radio or actual delivery of the warrant at the site to the police, who would on this evidence have already located defendant's domicile. Had he exited his home, the police could have arrested him forthwith without a warrant. The trial court found that exigent circumstances sufficient to warrant the setting aside of defendant's Fourth Amendment rights were not here present. Its findings are supported by substantial evidence and we are bound thereby. *State v. Johnson/Imel,* supra.

■ As previously stated, the trial court in its memorandum opinion made no finding of fact concerning the validity of the police entry into defendant's home. There is evidence both ways. Accordingly, we remand to the trial court for it to make findings of fact concerning the existence or nonexistence of consent by the defendant to the entry by police into his home. If it finds there was such consent, the order suppressing the evidence must be set aside. Accordingly, the order suppressing the evidence is vacated.

Reversed and remanded.

SCHWAB, C. J., concurring in part and dissenting in part.

The majority perceives this as a two-issue case: (1) were there exigent circumstances justifying a

warrantless search; and (2) was there consent to search?

On the first issue, I agree with the result the majority reaches — that the facts do not establish exigent circumstances justifying deviation from the Fourth Amendment's warrant requirement. However, I disagree with the majority's methodology. The majority treats the question of whether exigent circumstances were present as one of fact, and says we must affirm the trial court if its conclusion is supported by substantial evidence. As pointed out by *Ball v. Gladden,* 250 Or 485, 487, 443 P2d 621 (1968):

"What actually transpired is a question of fact for the trial court * * *. If the evidence sustains such historical factual findings they will not be disturbed by this court * * *."

*However,*

"* * * Whether these historical facts as found are sufficient to sustain a finding of * * * [exigent circumstances],"

is a question upon which this court must make its own independent determination.

The supposed second issue — consent — is not an issue in this case. The state never claimed, either in its brief filed in the trial court or in its brief filed in this court, that the search of defendant's tepee should be sustained as a consent search.

Moreover, even if the consent "issue" were properly before us, I note that the relevant testimony, from the officer who first entered defendant's tepee, is as follows:

"Q Okay. Did you ask permission to come into the tents? Did you announce your arrival, or what did you do?

"A Yes. I beat with the flat of my hand against the tent.

"Q Did you say anything?

"A I don't recall. I think Mr. Hickmann said, 'Come in,' or words to that effect.

"Q Well, it's very important. What did he say? Do you know what he said?

"A Just words to that effect; yes. To enter or come in or whatever.

"Q Do you recall a comment to the effect, either by you or Officer Ellis, when you hit the tent, 'Is anybody home?'

"A I don't recall.

"Q And you don't recall a comment made from the inside, 'Nobody's here'?

"A I don't specifically recall that.

"Q But what you do recall hearing, but you can't remember the specifics of it, is what you in your mind thought was an invitation to come in?

"A There wasn't any question of whether it was an invitation or not. I was going in, anyhow.

"Q * * * [D]id you identify yourself?

"A Not until we got in the tent.

"Q Not before you got in the tent?

"A Not to my knowledge.

"Q And you also don't know whether or not you were invited in?

"A I don't know; no."

I would hold that as a matter of law this vague and equivocal testimony does not prove, as the state must, valid consent to search.

Since my own evaluation of the historical facts leads me to the conclusion that exigent circumstances did not justify this warrantless search, since I do not think consent is an issue, and since if consent were an issue it should be resolved against the state on this record, I would affirm the trial court.