Argued February 25, reversed and remanded March 15, reconsideration denied April 21, petition for review denied May 25, 1976

STATE OF OREGON, *Appellant,*

*v.*

DEBRA KAY BASLER, *Respondent.*

(No. 75-3416, CA 5221)

STATE OF OREGON, *Appellant,*

*v.*

WAYNE PHILLIP BASLER, *Respondent.*

(No. 75-3417, CA 5222)

546 P2d 1084

*John W. Burgess,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the briefs were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

*Robert J. McCrea,* Eugene, argued the cause for respondents. With him on the brief were Morrow & McCrea, P. C., Eugene.

Before Schwab, Chief Judge, and Foley and Fort, Judges.

FOLEY, J.

**FOLEY, J.**

The state appeals from a circuit court order suppressing evidence of narcotics seized pursuant to a warrantless search of defendants and their automobile.

The salient facts are as follows: On July 2, 1975, at approximately 11:30 a.m. an anonymous party telephoned Officer Sharp of the Lane Interagency Narcotics Team and informed him that Wayne Basler, a known heroin dealer residing at a specified adress in Seattle, would arrive in Eugene between 5 and 7 p.m. that evening to sell heroin to a Eugene contact. The caller, who gave as his source an unidentified person expecting to purchase heroin from Basler, stated that Basler was traveling north from California in possession of heroin he intended to sell in Eugene, Portland, Olympia and Seattle. The caller described Basler as about 35 years of age, 5' 9" in height, with short brown hair. He described Basler's clothing as western in character and gave a detailed description of Basler's automobile. According to the caller, Basler would contact an identified owner of a brown van, in Eugene, who worked at a specified company.

Officer Sharp immediately contacted the Seattle Police Department which informed him that Basler had been arrested in both Seattle and Yakima for criminal activity in drugs and was thought to be in California with his wife, Debra Basler, also described, who had also recently been arrested on narcotic charges. The Seattle authorities confirmed Basler's address in Seattle and informed Sharp that Wayne Basler was personally known to them as was a person in Olympia whom they believed Basler could make contact with for the sale of heroin. Officer Sharp corroborated the following facts relating to the alleged Eugene contact: (1) The contact was listed as residing at the address specified, (2) a brown van was registered in the contact's name, and (3) the van was parked near the place where the contact was said to work.

[ 725 ]

After thus corroborating the incriminating information, at approximately 1:00 p.m. Sharp assigned officers to wait for the Baslers on the Interstate-5 freeway and officers to make continuous observation of the alleged contact. At approximately 6:15 p.m. the officers identified the Baslers' automobile driven by a male fitting Basler's description, dressed in western clothing, and accompanied by a female passenger. The officers followed the automobile to a motel in Eugene and, after checking the motel registration, found that Basler had registered in his own name.

Officer Sharp and others joined the two officers at the motel and waited in a room adjacent to the Baslers' room. Sharp testified that he maintained surveillance on both the Baslers and the contact because he expected Basler to deliver heroin to the contact at any time. Sharp discovered that the Baslers had a telephone in their room and could directly make outside calls without going through the motel switchboard. During the night, the Baslers left their room on a couple of occasions for innocuous reasons and left the motel only to go to a restaurant. The alleged contact went home after work for a short period of time and then drove to several houses in the Eugene area, returning home after each visit; he did not remain at home until after 2 a.m. Officer Sharp testified that he believed the contact was accumulating funds to purchase heroin from the Baslers.

The following morning at 9:15 a.m. Basler left his motel room, had his car serviced, and went to a restaurant. He then promptly returned to the motel, picked up his wife, and checked out of the motel. The Baslers then drove around to a couple of motels in the area. Sharp testified that he expected Basler to make contact with someone but that Basler saw one of the police cars and immediately drove to the freeway and headed north. The officers stopped the Baslers shortly after they entered the freeway and searched them and their automobile. The officers found approximately

three ounces of heroin and a small amount of amphetamines in the automobile, a small quantity of cocaine in Basler's pocket, and an opiate in his wife's purse.

■ The circuit court granted defendants' motion to suppress the evidence of narcotics on the ground that the officers should have procured a warrant authorizing the search of defendants and their automobile. It declined to determine whether probable cause existed for the search and made no specific findings of fact.[1] The court did conclude, however, that no exigent circumstances existed justifying the warrantless search. We agree with the state's contention that the officers were not constitutionally required to obtain a warrant during the course of their investigation and that it was impractical for them to do so when the Baslers abruptly left the area by automobile.

■■ A warrantless search and seizure is per se an unreasonable governmental intrusion and the state has the burden of establishing the validity of such an intrusion. *State v. Miller,* 269 Or 328, 524 P2d 1399 (1974). To justify a warrantless search, the state must prove (1) that probable cause existed to believe that a search of the person or place would disclose incriminating evidence and (2) that exigent circumstances outweighed the need for an independent judicial determination of probable cause. *State v. Poole,* 11 Or App 55, 500 P2d 726, Sup Ct *review denied* (1972); *see also State v. Allen/Reed,* 12 Or App 633, 508 P2d 472 (1973); *State v. Keith,* 2 Or App 133, 465 P2d 724, Sup Ct *review denied* (1970).

■■ Probable cause to search exists when the circumstances justify a well-warranted suspicion that the person to be searched has committed a crime. *State v. Murphy,* 2 Or App 251, 465 P2d 900, Sup Ct *review*

---

[1] Written findings of fact are required only in multi-issue cases in which a motion to suppress has been granted. State v. Johnson/Imel, 16 Or App 560, 519 P2d 1053, Sup Ct *review denied* (1974). However, as we said in *Johnson/Imel,* findings of fact are of assistance in review of any suppression case and the practice of making them is to be encouraged.

*denied, cert denied* 400 US 944 (1970). We hold that the incriminating information given to Officer Sharp by the anonymous caller regarding Basler's scheduled sale of heroin, which was significantly corroborated by the Eugene and Seattle police departments, together with the suspicious conduct of both the Baslers and the alleged contact while under surveillance, constituted probable cause to believe that the Baslers were in possession of heroin.

We next consider whether the state's failure to procure a search warrant was attributable to exigent circumstances. The officers' testimony at the suppression hearing indicates that they fully expected the Baslers and the contact to engage in a narcotics transaction from the time the surveillance was initiated until the Baslers abruptly headed for Interstate-5 the following morning. Officer Sharp explained the reason a search warrant was not sought before the Baslers attempted to leave the area:

> "Well, we felt that the contact was going to be made. And everybody was committed. I didn't feel we had time to go and obtain a search warrant. I expected the contact to be made all through the night."

■■ It is not incumbent upon police officers to seek a search warrant during the course of a continuing investigation. *State v. Allen/Reed,* supra. As we said in *Allen/Reed:*

> "* * * The mere fact that a police officer may have probable cause to get a warrant or make an arrest at a particular point does not mean he must stop his investigation and go for the warrant or make the arrest. This is the rule as we understand it from *Hoffa v. United States,* 385 US 293, 87 S Ct 408, 17 L Ed 2d 374 (1966), *rehearing denied* 386 US 940 (1967). *See also State v. Murphy,* 2 Or App 251, 258, 465 P2d 900, Sup Ct *review denied, cert denied* 400 US 944 (1970). It would be highly unreasonable to place the police in the position of having to guess whether requisite probable cause begins at a particular point. * * *" 12 Or App at 636.

Thus, the officers in this case were not constitutionally

required to secure a search warrant prior to their search of the defendants and their automobile. *See also State v. Taggart,* 14 Or App 408, 512 P2d 1359 (1973), Sup Ct *review denied, cert denied* 419 US 877 (1974).

■■ The question, then, is whether the officers should have sought to obtain a warrant when the Baslers abruptly headed for the interstate highway. When probable cause exists and police officers reasonably believe an immediate search is necessary to prevent the loss of evidence, a warrantless search is permissible. *Chambers v. Maroney,* 399 US 42, 90 S Ct 1975, 26 L Ed 2d 419 (1970); *State v. Krohn,* 15 Or App 63, 514 P2d 1359 (1973), Sup Ct *review denied* (1974). We conclude that the unexpected threatened removal of incriminating evidence from this jurisdiction constituted exigent circumstances justifying the warrantless search.

Reversed and remanded.