Argued November 16, reversed and remanded December 27, 1976,
reconsideration denied February 2, review denied March 29, 1977

STATE OF OREGON, *Appellant,*

*v.*

LLOYD HAND, *Respondent.*

(No. 47597, CA 6585)

558 P2d 353

*Kevin L. Mannix,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

*Gary L. Hooper,* Deputy Public Defender, Salem, argued the cause for respondent. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Before Schwab, Chief Judge, and Lee and Richardson, Judges.

LEE, J.

[ 887 ]

**LEE, J.**

The state appeals from a pretrial order of the circuit court suppressing evidence. ORS 138.060(3).

There is no dispute about the relevant facts of this case. On December 30, 1975 at approximately 4 a.m., four automobile tires were stolen from an unattended service station located off Interstate Highway 5, near a Kraft Company paper plant, in the vicinity of Albany, Oregon. The owner of the station described the missing tires to the investigating officer as "Shell radial ride whitewall tires, size LR 78-15"; he could not, however, provide any identifying serial or "batch" numbers as they were normally unrecorded until the time of sale when they would be noted for warranty purposes.

On March 10, 1976 a named informant indicated to a member of the Salem Police Department that in December of the previous year she had been residing at defendant's home in Salem with defendant and two others; that one morning shortly after Christmas of that year, defendant had returned home, after being absent the previous evening, at approximately 5 a.m. in possession of four brand new tires she later learned had been stolen from a Shell service station "across the freeway from a paper mill." The informant also indicated that those tires had been mounted on 15-inch wheels and placed on defendant's "red-over-white" Dodge. This information was communicated the following day, March 11, 1976, to the officers in charge of investigating the December burglary, Trooper Edwards of the Oregon State Police and Detective Slyter of the Linn County Sheriff's Office. In order to "follow-up" on that information, those officers decided to question defendant at his home that same day. Because the *only* "evidence" linking defendant with the December burglary, prior to the arrival of the officers at defendant's home, was the statement provided by the informant; Trooper Edwards testified that he did not feel he had sufficient probable cause to

obtain either an arrest or search warrant at that time; neither was sought before Trooper Edwards and Detective Slyter, accompanied by Detective Mason of the Salem Police, proceeded to defendant's home.[1]

Upon arriving at defendant's home the investigating officers discovered a "red-over-white" Dodge parked on the street; a cursory inspection of the tires mounted on that vehicle indicated they were, in fact, "Shell radial ride whitewalls, size LR 78-15," showing very little tread wear. Contacted in his home, defendant was advised of his constitutional rights and questioned about the circumstances surrounding his acquisition of the tires observed on what was acknowledged to be his car. In response to that questioning, defendant indicated that he had purchased the tires from a stranger named "John," that he had received no sales receipt at the time of the purchase, and that he had no idea how or where "John" might be contacted. Finding defendant's responses to be evasive at best, the officers concluded that together with their own observations of the tires and the information previously supplied by the informant, those responses provided them with probable cause to believe that the tires on defendant's car were, in fact, stolen property. The tires were then removed from the vehicle and taken into custody as evidence, although defendant was neither arrested nor charged with any crime at that time.

At the suppression hearing the state contended that the warrantless seizure had been reasonable and lawful because (1) the officers involved had probable cause to believe that the tires observed by them in "plain view" were evidence of a crime and (2) "exigent

---

[1] "* * * The mere fact that a police officer may have probable cause to get a warrant or make an arrest at a particular point does not mean he must stop his investigation and go for the warrant or make the arrest. This is the rule as we understand it from *Hoffa v. United States,* 385 US 293, 87 S Ct 408, 17 L Ed 2d 374 (1966), *rehearing denied* 386 US 940 (1967). *See also State v. Murphy,* 2 Or App 251, 258, 465 P2d 900, Sup Ct *review denied, cert denied* 400 US 944 (1970). * * *" *State v. Allen/Reed,* 12 Or App 633, 636, 508 P2d 472 (1973).

circumstances" required the seizure to be made without delay. In ordering the tires suppressed as evidence the court below specifically concluded that while the officers did, in fact, have probable cause to believe they were stolen at the time they were seized, the state had "failed to prove that there were exigent circumstances involved * * * to allow the (warrantless) seizure."

We agree, and the defendant now concedes, that after the officers had spoken with defendant on the morning of March 11, 1976, the circumstances were such that a reasonably prudent man would have been warranted in concluding that the tires observed on defendant's vehicle were stolen property. We are not, however, in accord with the court's legal conclusion that the failure to obtain a warrant in this case rendered the subsequent seizure of the tires unlawful.

Assuming, arguendo, that a warrant must be obtained as a prerequisite to the seizure of contraband or evidence of a crime, observed in "plain view" by an officer who is in a place where he has a legal right to be, in the absence of "exigent circumstances,"[2] the existence of such circumstances in this case is manifest.

At the time of the seizure the "evidence" involved was mounted on an automobile, owned by an individual not in custody who had been made aware of the interest of the police in that evidence, parked on a public street. Coupled with the fact that the defendant was not under arrest, the mobile nature of the vehicle "containing" the evidence provided the officers with sufficient reason to believe that an immediate seizure was necessary in order to avoid the possible loss of that evidence. *Texas v. White,* 423 US 67, 96 S Ct 304, 46 L Ed 2d 209 (1975); *Chambers v. Maroney,* 399 US 42, 90 S Ct 1975, 26 L Ed 2d 419 (1970); *State v. Girard,* 276 Or 511, 555 P2d 445 (1976); *State v. LeMay,* 27 Or App

_____
[2] *State v. Wright,* 21 Or App 659, 537 P2d 130, Sup Ct *review denied* (1975).

447, 556 P2d 688 (1976); *State v. Basler,* 24 Or App 723, 546 P2d 1084, Sup Ct *review denied* (1976); *State v. Krohn,* 15 Or App 63, 514 P2d 1359 (1973), Sup Ct *review denied* (1974); *State v. Taggart,* 14 Or App 408, 512 P2d 1359 (1973), Sup Ct *review denied, cert denied* 419 US 877 (1974).

Reversed and remanded.