Argued August 18, affirmed October 20, 1975

STATE OF OREGON, *Respondent, v.* WILLIAM
PRESTON BAGGETT, JR. (No. C 74-10-3204 Cr)
(CA 4165), *Appellant.*

541 P2d 493

*John K. Hoover,* Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*Donald L. Paillette,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Langtry and Lee, Judges.

LEE, J.

Defendant was convicted of murder. He assigns as error the denial of his motion to suppress: (1) certain statements made to the police in response to their questions before *Miranda* warnings were given and (2) "items" seized without a search warrant from a car in his possession.

In October 1974 Officer Duggan of the Buffalo, New York police department was informed that a bulletin had been received from Oregon stating that defendant was wanted for murder and might be headed for Buffalo. The bulletin mentioned that defendant was last known to be operating the murder victim's car, a 1971 Plymouth Fury, with black vinyl top, white body, and tan interior, bearing Oregon license EFF-895. The bulletin also said defendant might possess a seven-shot .38 caliber revolver.

Officer Duggan was also informed that a person was attempting to sell a seven-shot revolver at a certain gas station in Buffalo. Officers Duggan and Driscoll drove to the station and observed a Plymouth black-topped car with a white body and bearing South Dakota license plates parked on the premises. They learned from the station attendant that the person seeking to sell the gun was still in the building. They asked defendant for identification and he produced a driver's license bearing his picture whereupon the officers disarmed him of a seven-shot .38 caliber revolver, then handcuffed him and escorted him to the back seat of their police car.

Officer Duggan asked defendant if the Plymouth car was his. He replied that it was. Duggan then

asked defendant if he had the keys to the car. Defendant replied that they were in his pocket and he "allowed" Officer Duggan to remove them. Upon request, defendant identified the car keys. Using the keys, Officer Duggan opened and closed the trunk, then opened the left-front door of the car. He observed a set of license plates protruding from beneath the front seat. He removed them and noticed an additional set. One of these sets was Oregon plates EFF-895. The officers retained possession of the license plates and had a third officer take defendant's car to the police station. A warrant for a search of the car was obtained the next day.

Next, Officer Duggan entered the back seat of his car where defendant was lodged. Officer Duggan's testimony was that he told defendant he was wanted by Oregon for murder: "* * * and that before he said anything, or I asked any questions, that I wanted him to pay full attention to what I was going to say, that I had to explain to him, his constitutional rights." Defendant's *Miranda* rights were then read to him by Officer Duggan who further testified:

"* * * I asked him if he understood them, and if he had any questions regarding them. He said he fully understood them and he had no questions and that he knew he was caught and that he would tell me everything about the murder."

Later that day, defendant was given an opportunity to read a *Miranda* warning. He said he understood his rights and signed a card with his *Miranda* rights printed thereon. Defendant then made a detailed confession to the murder (and car theft).

Defendant contends that: (1) his confession was prompted by discovery of the license plates and (2) the plates were discovered in the course of an illegal search. The search is said to be illegal because (a)

prior to receiving his *Miranda* warning he was asked questions which produced the car keys that revealed the plates, and (b) no warrant was procured for the search. The record does not disclose whether defendant knew the police had found the license plates at the time he made the confession.

The search of the automobile was not illegal, nor was obtaining the keys therefor from defendant without giving him *Miranda* warnings. The officers already had a distinctive description which fit the automobile, one which had been stolen from the murdered victim.

In *Chambers v. Maroney,* 399 US 42, 90 S Ct 1975, 26 L Ed 2d 419 (1970), the police were given a description of the robbers' car and of the clothing the robbers wore. Shortly after, they stopped a car answering the description, occupied by men clothed as described. They took the car to the station and conducted a warrantless search producing contraband evidence which was admitted at trial over the challenge that the search was illegal. The United States Supreme Court held the search of a car is different than other searches in this respect, and was legal, saying:

"* * * For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment." 399 US at 52.

*See also State v. Keith,* 2 Or App 133, 465 P2d 724 *review denied* (1970).

In the case at bar, the officers had probable cause to search defendant and the car. The defendant was

reportedly armed. The search of the defendant produced the unusual seven-shot .38 caliber revolver. Getting the car keys was inherently only a part of the same personal search, and needed no questions at all for its execution.

Affirmed.