Submitted on record and briefs September 27, affirmed November 22, 1976

STATE OF OREGON, *Respondent,*

*v.*

WILFORD JOSEPH LE MAY, *Appellant.*

(No. C-75-06-1801 Cr, CA 5486)

556 P2d 688

Wilford Joseph LeMay, Salem, filed the briefs pro se for appellant.

Lee Johnson, Attorney General, W. Michael Gillette, Solicitor General, John W. Burgess, Assistant Attorney General, Salem, filed the brief for respondent.

Before Schwab, Chief Judge, and Thornton and Lee, Judges.

LEE, J.

## LEE, J.

Indicted for the crime of murder, defendant was tried by a jury, convicted of the lesser crime of manslaughter,[1] and sentenced to an indeterminate term of imprisonment not to exceed ten years. On appeal defendant raises two questions requiring discussion: (1) Did the trial court err when it refused to exclude incriminating evidence seized by Canadian authorities from defendant's automobile while it was located in Canada? (2) Was evidence of a crime other than that charged by the indictment in this case improperly presented to the jury?[2]

---

[1] Defendant was charged under ORS 163.115 which at that time provided in relevant part that "criminal homicide" constituted "murder" when:

"* * * * *

"(a) * * * committed intentionally; or

"(b) * * * committed recklessly under circumstances manifesting extreme indifference to the value of human life; or

"(c) * * * committed by a person, acting either alone or with one or more persons, who commits or attempts to commit arson in the first degree, burglary in the first degree, escape in the first degree, kidnapping in the first degree, rape in the first degree, robbery in any degree or sodomy in the first degree and in the course of and in furtherance of the crime he is committing or attempting to commit, or the immediate flight therefrom, he, or another participant if there be any, causes the death of a person other than one of the participants.

"* * * * *."

At the same time ORS 163.125 defined "manslaughter" as a criminal homicide:

"* * * * *

"(a) * * * committed recklessly; or

"(b) A homicide which would otherwise be murder [which] is committed under the influence of extreme emotional disturbance, which disturbance is not the result of [the defendant's] own intentional, knowing, reckless or criminally negligent act, and for which disturbance there is a reasonable explanation; * * *

"* * * * *."

[2] Defendant has also alleged a denial of his constitutional right to conduct his defense in propia persona. Or Const, Art I, § 11; State v. Verna, 9 Or App 620, 498 P2d 793 (1972); Faretta v. California, 422 US 806, 95 S Ct 2525, 45 L Ed 2d 562 (1975). Our review of the voluminous record made in this case indicates that the court below both recognized and respected defendant's right to act in his own behalf. Neither the denial of a continuance requested by defendant on the day the trial was to begin nor

Late in the afternoon of June 4, 1975, a five-year-old girl playing in the yard of her mother's home located in a busy residential/commercial area of Portland was struck and killed by a bullet fired from a .38 caliber revolver. At approximately the same time the victim had been wounded, witnesses had heard several shots originating from a wooded area adjacent to her home; an individual matching defendant's description, together with a young boy, had been seen entering that area only minutes before the shots had been heard and were observed leaving the area shortly after the shooting had stopped. Based on information that defendant, residing with his teenage son in a motel in the vicinity of the shooting, had been inquiring about the availability of a place where he might do some target practice, Portland police went to the motel during the early morning hours of June 5 and, with the consent of defendant's roommate, engaged in a search for evidence which might connect the defendant with the crime. That search produced a shirt similar to that worn by the man seen in the area of the shooting. A single round of .38 caliber ammunition was also discovered immediately outside the motel room.

On June 6, 1975, the Vancouver, B. C. police were informed by Portland authorities that defendant, who together with his son had disappeared from Portland, was wanted for questioning in connection with the fatal shooting. Having learned that defendant was in fact working at a car wash in their city, Vancouver police took him into custody later that same day. Defendant's automobile, licensed in Oregon and apparently used to travel from Portland to Vancouver, was located and impounded at that time. On June 7,

------

the limited access to legal research materials necessarily arising from defendant's pretrial incarceration served to prevent him from effectively exercising that right. Although the trial court did, over defendant's objection, appoint a "legal assistant" to aid defendant, that appointment was within the authority of the court, and that assistant's limited participation during the course of the trial was at least tacitly accepted and encouraged by the defendant.

1975, defendant was returned to the United States and, after being incarcerated in the state of Washington for a short period of time, transported to the Multnomah County Jail.

On June 18, 1975, a Portland police detective sent a letter to defendant, still being held in the county jail, informing him that all "holds" on his car were being released. Some six days later an anonymous caller disclosed to Portland authorities that defendant had smuggled a sketch out of the county jail to an identified friend illustrating a hiding place on his vehicle in which he had secreted two handguns and a quantity of ammunition. The identified friend was interviewed by the police that same day and as a result of that interview supplied them with a sketch similar to that described by the anonymous caller. Having obtained that sketch the Portland police immediately contacted Vancouver authorities and requested that they search the left front wheel well of the vehicle still located in their garage. Acting on that request, the Vancouver police thereafter discovered two .38 caliber revolvers and 50 rounds of .38 caliber ammunition hidden on the auto. Both the firearms and the ammunition were subsequently turned over to the Portland police. Ballistics tests performed at a later date indicated that one of the two handguns recovered from defendant's vehicle had fired the bullet which had fatally wounded the victim on June 4.

Arguing that the search of his automobile in Canada by Canadian authorities was illegal and that the evidence seized as a result of that search was obtained in violation of his constitutional rights, defendant contends here that the trial court erred in denying his motion to suppress the handguns and ammunition received by the state from the Vancouver police. In response, the state has first suggested that constitutional guarantees against "unreasonable" searches and seizures[3] have no application whatsoever

[3] Or Const, Art 1, § 9; US Const, Amends IV and XIV.

to the acts of foreign authorities occurring within a foreign jurisdiction.

■ Although the rule that the Bill of Rights is inapplicable to actions taken by a foreign sovereign within its own territory in the course of enforcing its own laws has been generally accepted,[4] some courts have indicated that an exception to the rule may have application to searches by foreign authorities in which American officials have participated in any substantial way.[5] Even assuming, however, that a search falls within the ambit of the constitutional protection against unreasonable searches and seizures where, as here, it is specifically conducted by foreign officials at the request of and for the benefit of American authorities, the search undertaken in this case did, in fact, meet the constitutional standard of reasonableness.

When the Portland police came into possession of the sketch detailing the location of two handguns allegedly hidden on defendant's automobile, it provided them with probable cause to believe that the weapon used in the fatal shooting, as yet unrecovered, would be found on that vehicle.[6]

Had the auto been located within their jurisdiction the Portland police might have proceeded, based on that probable cause, to search or impound and then search the vehicle. *Texas v. White,* 423 US 67, 96 S Ct 304, 46 L Ed 2d 209 (1975); *Chambers v. Maroney,* 399

---

[4] *United States v. Nagelberg,* 434 F2d 585 (2nd Cir 1970), *cert denied* 401 US 939 (1971); *Brulay v. United States,* 383 F2d 345 (9th Cir 1967); *Birdsell v. United States,* 346 F2d 775 (5th Cir 1945).

[5] *United States v. Wolfish,* 525 F2d 457 (2nd Cir 1975), *cert denied* 423 US 1059 (1976); *United States v. Cotroni,* 527 F2d 708 (2nd Cir 1975), *cert denied* 426 US 906 (1976); *Stonehill v. United States,* 405 F2d 738 (9th Cir 1968), *cert denied* 395 US 960 (1969).

[6] At the time they received a copy of the sketch, the Portland police already had reason to believe that defendant had been in the vicinity of the shooting at the time it occurred, and that he owned or possessed a handgun; they also knew that a round of ammunition of the same caliber as the fatal bullet had been discovered just outside the motel room occupied by defendant up to the day of the shooting.

US 42, 90 S Ct 1975, 26 L Ed 2d 419 (1970); *State v. Baggett,* 23 Or App 113, 541 P2d 493 (1975); *State v. Miller,* 14 Or App 396, 513 P2d 508 (1973); *State v. Poole,* 11 Or App 555, 500 P2d 726, Sup Ct *review denied* (1972); *State v. Diaz,* 3 Or App 498, 473 P2d 675, Sup Ct *review denied* (1970). Having been based, as it was, on the same "probable cause," the search conducted by the Vancouver, B. C. police as agents of the Portland police did not, therefore, offend any constitutional provision. The circuit court did not err in refusing to suppress the handguns and ammunition offered as evidence.

■ Among the witnesses appearing on behalf of the state, one identified defendant as the individual who, in May, 1975, had robbed him of, among other things, the handgun shown to have fired the fatal bullet in this case. That testimony was specifically offered as circumstantial evidence of the fact that defendant had possessed the weapon at the time of the shooting. Defendant sought to have the testimony excluded in its entirety, arguing that as evidence of an additional crime it would serve to unnecessarily prejudice him in the eyes of the jury; the denial of the motion to exclude the testimony is assigned as error.

Convicted of the crime of armed robbery, defendant in *State v. Zimmerlee,* 261 Or 49, 492 P2d 795 (1972) argued on appeal that evidence of his use of the handgun alleged to have been used in the robbery in an assault later that same evening had improperly been presented to the jury. In accordance with the general rule that "the prosecution may not introduce evidence of other criminal acts of the accused unless the evidence is substantially relevant for some other purpose than to show a probability that he committed the crime on trial because he is a man of criminal character,"[7] the court concluded, in effect, that where possession of a weapon at the time of the commission

---

[7] McCormick, Evidence 447 § 190 (2d ed E. Cleary 1972). *See also, State v. Manrique,* 271 Or 201, 531 P2d 239 (1975).

of the crime charged is an issue, evidence of the possession or use of the same or a similar weapon at another time is, in fact, relevant and admissible even though that evidence is also probative of a second crime for which the defendant is not being tried.

Despite so holding, the court reversed the defendant's conviction in *Zimmerlee* on the grounds that once he had offered to stipulate to having possessed the gun subsequent to the alleged robbery

"* * * the *only* purpose that [was] served by permitting the state to prove the subsequent crime [was] to show that because defendant had committed another crime he was a bad man and therefore probably committed the crime for which he was charged. In these circumstances the prejudicial effect of the evidence [outweighed] its probative value and [was] not admissible." (Emphasis supplied.) 261 Or at 54.

Defendant's possession of the firearm involved at the time of the shooting was quite obviously an issue in the instant case. In an attempt to avoid the introduction of evidence relating to the theft of the weapon by defendant, the prosecution specifically requested him to stipulate to having possessed the weapon prior to June 4, 1975. Despite the fact that the trial court went to great lengths to explain the consequences of his refusal to him, the defendant declined to enter into the unequivocal stipulation required. Under these circumstances the admission of the testimony was proper.[8]

Affirmed.

---

[8] *See State v. Aronhalt,* 18 Or App 577, 526 P2d 463, Sup Ct *review denied* (1974); *State v. Clipston,* 3 Or App 313, 473 P2d 682 (1970).